ROBERT ELNO McGLONE, MARIE TSEU, MILTON MANHOFF, MURRAY M. HIXSON, HELEN COLE and EDWARD ARRIGONI, Plaintiffs-Appellants, *v.* RODNEY YOSHIMITSU INABA, ALAN SHIGEYUKI HAYASHI, BENJAMIN MASAO HAYASHI, DEPARTMENT OF LAND AND NATURAL RESOURCES; CHRISTOPER COBB, as Chairman of the Department of Land and Natural Resources of the State of Hawaii; MOSES KEALOHA, SHINICHI NAKAGAWA, MANUEL MONIZ, HISAO MUNECHIKA, LARRY MEHAU, as Members of the Department of Land and Natural Resources of the State of Hawaii, Defendants-Appellees

NO. 6374

CIVIL NO. 46912

NOVEMBER 13, 1981

RICHARDSON, C.J., OGATA, MENOR, LUM AND NAKAMURA, JJ.

OPINION OF THE COURT BY OGATA, J.

This is an appeal brought by Plaintiffs-Appellants, Robert Mc-Glone, Marie Tseu, Milton Manhoff, Murray Hixson, Helen Cole and Edward Arrigoni (hereinafter Appellants), from an order by the Circuit Court of the First Circuit denying Appellants' request for permanent injunction.

Appellants, a group of persons interested in the preservation of the environment at Paiko Lagoon, Kuliouou, Oahu, brought suit to enjoin Defendants-Appellees, the Department of Land and Natural Resources and the six individual members of the Board of Land and Natural Resources (hereinafter BLNR), from approving the construction of underground utilities on conservation land on Paiko Peninsula by Defendants-Appellees, Rodney Inaba and Alan and Benjamin Hayashi (hereinafter Appellees), on the ground that the BLNR had not required the preparation of an environmental impact statement prior to the approval of the construction. For the reasons set out below, we affirm.

## I.

Paiko Lagoon, an area consisting of mudflats, is located on the southeastern coast of the island of Oahu. It is also surrounded by private residential property and state-owned conservation land. In 1974, pursuant to BLNR Regulation 38,[1] Paiko Lagoon and the state-owned lands around the lagoon, including certain portions of Paiko Peninsula, were made a wildlife sanctuary "for the conservation, management and protection of indigenous and other bird species inhabiting the area." Among the birds sought to be protected is the Hawaiian Black-necked Stilt, an endangered species of Hawaiian waterbird, which, it is alleged, uses Paiko Lagoon as a feeding and nesting area.

Appellees are co-owners of a residential lot on Paiko Peninsula (hereinafter Lot 718). However, Lot 718 is closed off from Paiko Lagoon proper by a state-owned conservation parcel (hereinafter Lot 715). Lot 715 is part of the Paiko Lagoon Wildlife Sanctuary. The only overland access to Lot 718 is by way of an unimproved dirt road through Lot 715. As such, Appellees have a perpetual non-exclusive easement over Lot 715.

Appellees, wishing to build a house on Lot 718, submitted to the BLNR a conservation district use application (hereinafter CDUA) to construct and install underground utilities through Lot 715 to their homesite on Lot 718.[2] On October 10, 1975, the BLNR, at its regularly scheduled meeting, approved Appellees' CDUA. Appellants did not appear or offer testimony at this meeting.

In approving the CDUA, the BLNR determined that an environmental impact statement (hereinafter EIS) was not required since the proposed activity was deemed an exempt activity under the Environmental Impact Statement Regulations (hereinafter EIS Regs.).[3]

---

[1] Regulation 38 was adopted by the BLNR February 8, 1974, signed by the Governor March 13, 1974, and became effective March 30, 1974.

[2] Insofar as Lot 715 is classified as conservation by the State Land Use Commission, it is properly within the jurisdiction of the BLNR. HRS § 205-5(a). Any proposed use of Lot 715 must therefore be approved by the BLNR. HRS § 183-41. Lot 718 is not classified as conservation and therefore is not under the jurisdiction of the BLNR.

[3] The EIS Regs. were promulgated by the Environmental Quality Commission, pursuant to HRS § 343-5 (since renumbered as § 343-6). It was adopted April 3, 1975 and became effective June 2, 1975.

Thereupon, on December 4, 1975, Appellants instituted this suit in the circuit court for injunctive and declaratory relief. They sought to have the BLNR approval declared void and to enjoin the BLNR from issuing permits required for construction and Appellees from initiating construction. Appellants argued that the BLNR's finding that Appellees' proposed construction was categorically exempt from preparation of an EIS was clearly contrary to applicable statutes and EIS Regs. Therefore, they asserted, before the BLNR could approve Appellees' CDUA, an acceptable EIS would have to be prepared.[4]

On February 2, 1976, in a motion to dismiss or for summary judgment, Appellees contended that Appellants lacked standing to sue. First, Appellees argued that Appellants' suit, although couched in terms of an original action, was, in actuality, an appeal from an agency decision governed by the Hawaii Administrative Procedures Act (hereinafter HAPA). Further, in order to have standing to appeal under HAPA the aggrieved party must have participated in the agency hearing. Consequently, since Appellants had not participated in the October 10, 1975 BLNR hearing, they could not now contest the BLNR's decision.

On March 3, 1976, at the hearing on Appellees' motion, Appellants explained that the reason they had not testified at the BLNR hearing was that no notice had been given them by the BLNR. Since they had not testified, Appellants urged that the court should now hear their testimony and allow them to present expert witnesses.

The lower court ruled that, although the action was an appeal under HAPA, Appellants did not lack standing. The court refused, however, to allow Appellants to testify or otherwise present evidence. Instead, since public notice was not given or published by the BLNR and consequently Appellants had no opportunity to present evidence material to the BLNR's inquiry, the court remanded the case to the BLNR to determine whether additional testimony should be taken, and if so to again consider Appellees' CDUA.

---

[4] After the approval of the CDUA, Appellees commenced construction of the underground utilities and house on Lots 715 and 718 respectively. Construction continued despite the initiation of Appellants' action. The lower court warned, however, that should its ruling be unfavorable to Appellees, it would require Appellees to tear down any structures built. At present, the house on Lot 718 is completed and Appellee Inaba and his family have occupied the residence since July, 1977.

Subsequently, on April 9, 1976, the BLNR agreed to hear the additional testimony of the parties to this suit on the issue of whether the proposed action was exempt from preparation of an EIS. For the purpose of this hearing, the parties stipulated to certain procedural conditions.[5]

On April 23, 1976, the BLNR received both the oral and written testimonies of both parties and their witnesses. However, only the written testimony of the participants was made part of the record for review by the circuit court. The oral testimony was not transcribed or included in the record of review.

On May 5, 1976, after considering the evidence presented, the BLNR unanimously reaffirmed its earlier determination that Appellees' proposed construction was exempt from preparation of an EIS and thus reapproved Appellees' CDUA.

Thereafter, Appellants again filed motions for a temporary restraining order and preliminary injunction in the lower court. At the hearing on the motion for preliminary injunction on May 26, 1976, Appellants again sought to testify before the court or be allowed to transcribe and admit their earlier oral testimony given before the BLNR. Appellants argued that they should be given this opportunity since their oral testimony before the BLNR far exceeded in scope their written testimony appearing on the record.

The court ruled, however, that in an appeal under HAPA, the court's review would be confined to the record and no additional evidence would be considered. Upon consideration of the record, the court concluded that there was substantial evidence to support the decision of the BLNR and that Appellants had failed to prove any other error of substance or procedure that the BLNR violated or failed to follow. The court, therefore, affirmed the BLNR's decision and denied Appellants' request for permanent injunction. The Decision and Order of the circuit court was filed June 29, 1976. On July 12, 1976, Appellants filed this appeal.

Appellants assert basically two errors, namely: First, at the May 26, 1976 hearing, the trial court erred in denying Appellants the

---

[5] The parties agreed that there would be a time limit for the presentation of testimony; there would be no cross-examination of witnesses presenting additional testimony; and that it would not be necessary to transcribe the record unless requested for purposes of rehearing or court review.

opportunity to present either oral testimony or the transcripts of Appellants' prior testimony before the BLNR; and second, that the BLNR erred in finding that the proposed construction of the underground utilities at Paiko Lagoon was exempt from the preparation of an EIS.

## II.

Appellants contend that the lower court erred in refusing (1) to allow Appellants and their expert witnesses from testifying before the court, or (2) to allow their earlier oral testimony made before the BLNR be transcribed and admitted in the record. They argue that this denial deprived them of the right to a review of the complete record and that the lower court was thereby precluded from a proper assessment of the BLNR's decision.

The BLNR is an agency within the executive department of the State as defined in HRS § 91-1. Therefore, any review of a final decision and order issued by the BLNR is governed by HRS § 91-14.

HRS § 91-14(a) and (b) provide that review of an agency decision is ordinarily by way of an appeal to the circuit court.[6] Under such an

---

[6] Appellants argued that the lower court erred in categorizing this action merely as an appeal under HAPA. HRS § 91-14(a) provides an aggrieved party to a judicial review of a final decision of an agency in a contested case. Judicial review will ordinarily be by way of an appeal to the circuit court, unless there is a right to direct appeal to this Court pursuant to statute, or review is proper by "other means of review, redress, relief, or trial de novo, including the right of trial by jury, provided by law." HRS § 91-14(a).

Appellants assert that HRS ch. 343, containing Hawaii's EIS provisions, provides the circuit court with original jurisdiction to grant declaratory and injunctive relief, or, in the alternative, permits Appellants a trial de novo. In either case, they contend, the lower court would be empowered to hear testimony and make independent findings. We do not agree.

We note that the intent of the proviso in HRS § 91-14(a) is to afford a party the right to a trial by jury or a trial de novo only "whenever said right is allowed by statute or common law." Stand. Comm. Rep. No. 8, 1961 House Journal, p. 660. A reading of HRS ch. 343, however, does not reveal any explicit statutory grant allowing Appellants the right to a trial by jury or a trial de novo. Moreover, we do not think any such right should be implied under the statute.

We have recognized that HAPA was enacted to provide uniformity in the area of administrative procedure. *See* Town v. Land Use Commission, 55 Haw. 538, 524 P.2d 84 (1974). This certainty of procedure should not be abrogated unless clearly required by statute or common law.

Further, we do not feel that by treating Appellants' action as an appeal under

appeal, the circuit court is confined to a review of the record of the prior agency proceedings and decision as designated by the parties, HRS § 91-14(d) and (f); Rule 72 HRCP; *see Life of the Land v. Land Use Comm'n*, 58 Haw. 292, 568 P.2d 1189 (1977), "except that in cases where a trial de novo, including trial by jury, is provided by law and also in cases of alleged irregularities in procedure before the agency not shown in the record, testimony thereon may be taken in court." HRS § 91-14(f).

However, having determined that a trial de novo or trial by jury is unavailable to Appellants in this action, and insofar as Appellants have not argued that this is a case alleging irregularities in procedure before the BLNR, we believe that the court's review was properly confined to the designated record. As such, the lower court did not err in refusing to allow Appellants and their expert witnesses to testify in court.

Similarly, the lower court did not err in denying Appellants' request to transcribe the testimony given by their expert witnesses at the BLNR hearing for admission into the record.

HRS § 91-14(d) authorizes the circuit court to "require or permit subsequent corrections or additions to the record when deemed desirable." We note, at the outset, that the parties agreed that the oral testimony given before the BLNR would not have to be transcribed unless requested by a party for the purposes of court review. Subsequently, Appellants had full opportunity to transcribe such testimony and designate it as part of the record. However, Appellants neglected to even attempt this until May 26, 1976, the very day of the hearing on the motion for preliminary injunction. We feel Appellants' request was untimely, and therefore the court did not abuse its discretion in refusing to grant the addition of the instant transcription.

## III.

Under HAPA, a reviewing court may reverse or modify the

---

HAPA we have prejudiced Appellants or have denied them any due process rights. Here, although Appellants sue in an original action, the substance of their claim is a review of an agency decision. The mere designation of the suit as an original action will not render the provisions under HAPA inapplicable. *See* Melemanu Woodlands Com. Ass'n v. Koga, 56 Haw. 235, 533 P.2d 867 (1975). In addition, the relief sought by Appellants is readily available under HAPA.

decision of an administrative agency only under a limited set of circumstances as prescribed by statute.[7] Under HRS § 91-14(g)(5), a court may reverse or modify an agency decision only if "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record."

We have held that to find an agency decision "clearly erroneous", the appellate court must be "left with a firm and definite conviction that a mistake has been made." *In Re Kauai Elec. Div. of Citizens Util. Co.,* 60 Haw. 166, 590 P.2d 524 (1978); *DeFries v. Association of Owners,* 57 Haw. 296, 555 P.2d 855 (1976); and *De Victoria v. H. & K., Contractors,* 56 Haw. 552, 545 P.2d 692 (1976).

With this standard in mind, we turn to Appellants' second assignment of error, that the BLNR erred in finding that the proposed construction of underground utilities at Paiko Lagoon was exempt from the preparation of an EIS.

Appellants contend that under HRS Ch. 343, the BLNR could not properly approve Appellees' CDUA and therefore Appellees could not begin construction, without first preparing an EIS.

HRS § 343-4(a)(2)(B)[8] requires that an EIS be prepared for all actions proposing the use of conservation land "which will probably have significant environmental effects." *See Molokai Homesteaders Coop. Ass'n v. Cobb,* 63 Haw. 453, 629 P.2d 1134 (1981).

"Significant effect", under HRS § 343-1(8)[9] means:

... the sum of those effects that affect the quality of the

---

[7] HRS § 91-14(g) provides:

(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

[8] HRS § 343-4(a)(2)(B) has been amended and renumbered and is currently embodied in HRS § 343-5.

[9] HRS § 343-1(8) has been renumbered to HRS § 343-2(11).

environment, including actions that irrevocably commit a natural resource, curtail the range of beneficial uses of the environment, are contrary to the State's environmental policies or long-term environmental goals as established by law, or adversely affect the economic or social welfare.

However, as this definitional provision illustrates, "significant effect" is a relative concept. The quality and gravity of the effect on the environment which may be caused by a proposed activity varies according to the circumstances involved. Any determination, therefore, is highly subjective. Nevertheless, an agency making such a determination must consider every phase and every expected consequence of the proposed action. EIS Regs. 1:31(a); *See Molokai Homesteaders Coop. Ass'n v. Cobb, supra.*

To assist agencies in interpreting HRS § 343-1(8), HRS § 343-5 authorizes the Environmental Quality Commission (hereinafter EQC) to establish guidelines specifying classes of actions which will be exempt from the preparation of an EIS because such actions will probably have minimal or no significant effect on the environment.[10]

---

[10] Alternatively, the EQC has promulgated EIS Regs. 131, which sets out criteria that may define an activity as one likely to result in a "significant effect", within the meaning of HRS § 343-1(8). It reads:

1:31 *SIGNIFICANCE CRITERIA AND PROCEDURES.*

In considering the significance of potential environmental effects, agencies shall consider the sum of those efffects that affect the quality of the environment, and shall evaluate the overall and cumulative effects of the action.

A "significant effect" may vary with individual setting and circumstances of particular actions. Generally, however, any action which may have a major effect on the quality of the environment, or affect the economic or social welfare of an area, or would possibly be contrary to the State's environmental policies or long-term environmental goals and guidelines as expressed in Chapters 342 and 344, Hawaii Revised Statutes, and any revisions thereof and amendments thereto, would likely result in a "significant effect."

a. In determining whether an action may have a significant effect on the environment, the agency shall consider every phase of a proposed action, and expected consequence, either primary or secondary, or the cumulative as well as the short or long-term effect of the action. All agencies should bear in mind that in most instances, the following factors of an action, although not limited to same, may constitute a significant effect on the environment when the action:

1. involves an irrevocable commitment to loss or destruction of any natural or cultural resource;

2. curtails the range of beneficial uses of the environment;

3. conflicts with the State's long-term environmental policies or goals and

These exemptions are contained in EIS Regs. 1:33(a). Among the activities exempted are the construction of a single family residence, EIS Regs. 1:33(a)(3)[a], and the construction of support utilities, EIS Regs. 1:33 (a)(3)[d].[11]

However, these categorical exemptions are made inapplicable "when an action that is normally insignificant in its impact on the environment may be significant in a particularly sensitive environ-

---

guidelines as expressed in Chapters 342 and 344, Hawaii Revised Statutes, and any revisions thereof and amendments thereto, Court decisions or Executive Orders;

4. Substantially affects the economic or social welfare of the community or State;

5. substantially affects economic or sociological activities;

6. involves substantial secondary impacts such as population changes or effects on public facilities;

7. involves a substantial degradation of environmental quality;

8. is individually limited but cumulatively has considerable effect upon the environment or involves a commitment for larger actions;

9. substantially affects a rare, threatened or endangered species of animal or plant, or habitat;

10. detrimentally affects air or water quality or ambient noise levels; or

11. affects an environmentally sensitive area such as a flood plain, tsunami zone, erosion-prone area, geologically hazardous land, estuary, fresh water, or coastal waters.

Appellants argue that the proposed construction will significantly affect Paiko Lagoon under EIS Regs. 1.31(a)(1), (3), (9) and (11). We dispose of these contentions *infra.*

[11] EIS Regs. 1:33(a)(3)[a] and [d] provides:

*EXEMPT CLASSES OF ACTION.*

a. Chapter 343, Hawaii Revised Statutes, has directed that a list of classes of actions be drawn up which, because they will probably have minimal or no significant effect on the environment, shall generally be exempted from the preparation of an EIS and Negative Declaration. Actions exempt from the preparation of an EIS under this section are not exempt from complying with any other applicable statute, rule or regulation. The following list represents exempt classes of action:

3. construction and location of single, new, small facilities or structures and the alteration and modification of same and installation of new, small, equipment and facilities and the alteration and modification of same including but not limited to: [a] single family residences not in conjunction with the building of two (2) or more such units; . . . [d] water, sewage, electrical, gas, telephone, and other essential public utility services extensions to serve such structures or facilities; . . . .

ment." EIS Regs. 1:33(b).[12]

Appellants assert that the Paiko Lagoon Wildlife Sanctuary, where an endangered species of bird, the Hawaiian Black-necked Stilt, purportedly feeds and nests is a "particularly sensitive environment", which would be significantly affected by the construction of the underground utilities and the construction, use and occupancy of Appellees' house.

The BLNR, however, found that the proposed activities would not have a significant effect on a particularly sensitive environment. Unfortunately, we are unable to determine from the BLNR's decision whether the BLNR considered the Paiko Lagoon Wildlife Sanctuary a "particularly sensitive environment" for the purposes of EIS Regs. 1:33(b).[13] In any case, we do not find clearly erroneous the BLNR's conclusion that the proposed construction would probably not have a significant effect on the sanctuary.

The BLNR found that the effect of the construction of underground utilities on Lot 715 — designated the primary impact[14] — would only be minimal and temporary. There is ample evidence to support this finding.

---

[12] EIS Regs. 1:33(b) also indicates the limited nature of categorical exemptions. As noted earlier, these activities are designated exempt because it is presumed that under ordinary circumstances there occurs negligible environmental impact. However, what is normally presumed to be innocuous activities may constitute actions which will significantly affect the environment when done in "sensitive" areas or under varying circumstances. Merely because the proposed activities here are listed as exempt does not make it so. The building of a house and the support facilities are only deemed exempt because it will probably not have a significant effect under the totality of circumstances. *See* Downtown Traffic Planning v. Royer, 26 Wash. App. 156, 612 P.2d 430 (1980).

[13] The BLNR, in a rather cryptically phrased findings of facts, conclusions, and decision, filed May 17, 1976 concluded:

1. The proposed action, construction of the underground utilities, will not have a significant effect in a particularly sensitive environment.

2. The construction, use and occupancy of the Inaba residence on Paiko Peninsula will not have a significant effect in a particularly sensitive environment.

3. The proposed action, construction of the underground utilities, is included within the exempt classes of action under EIS regulation 1:33.

4. The construction of the Inaba residence on Paiko Peninsula is included within the exempt classes of action under EIS regulation 1:33.

[14] The construction of the underground utilities on Lot 715 is designated a "primary impact" because it is that parcel which directly impacts on the conservation parcel.

For example, we note that the BLNR's approval of the CDUA necessitated Appellees' compliance with certain conditions. Appellees were required to protect against pollutants entering the lagoon and also to limit construction to the non-feeding hours of the birds. These conditions were sought in order to minimize the disturbance of the birds by the construction. It appears to have worked. During construction, biologists from the Division of Fish and Game monitored the effects of the activities on the birds. They reported that there was no noticeable disturbance and, in fact, on one occasion, had spotted two Hawaiian Stilts feeding during the construction activities.

The physical effect to the land, Lot 715, also seems to have been negligible. Once construction ceased, the impacted area quickly returned to its pre-construction condition. The land had not been irrevocably damaged or destroyed.

Appellants argue that the construction, use and occupancy of the Appellees' house — designated the secondary impact[15] — will substantially affect Paiko Lagoon. The record, however, does not clearly reflect this conclusion.[16]

First, appellants claim that the noise and activity arising from Appellees' residence on Paiko Peninsula will disturb the nesting and feeding of the Hawaiian Stilt. However, from the record, it is not even certain that the Hawaiian Stilt is bothered by noise or sudden movements. We note that Appellees' expert witness, Dr. Andrew Berger, testified that in studies made at Kahana Pond, Hawaiian Stilts were not disturbed by passing automobile traffic or airplane flights over the pond. The fact that Hawaiian Stilts have been observed feeding during construction activities further supports this conclusion. In any event, as the BLNR found, any noise that does arise from Appellees' residence would be muffled by the prevailing

---

[15] The construction, use, and occupancy of Appellees' house on Lot 718 is designated a "secondary impact" because this activity is incident to and a consequence of the primary impact, i.e., construction of the underground utilities. The effects of such "secondary impacts", like "primary impacts", must be considered in determining the relative environmental effects.

[16] We recognize that conflicting testimony was presented by the parties on this issue. However, it is the function of the BLNR, as the finder of facts, to weigh the credibility of the witnesses and therefore its determination "will not be disturbed lightly." De Victoria v. H & K Contractors, *supra* at 559.

winds and carried away from the lagoon. Similarly, any sudden movements arising from activities at Appellees' residence would be obscured by vegetation and the high walls of the house.

There is also considerable question whether Paiko Lagoon is essential to the preservation of the Hawaiian Stilt. The BLNR found that in recent years the population of the Hawaiian Stilt has drastically declined. This decline, however, is not in any way related to Appellees' activities. Moreover, the prospect that Hawaiian Stilts will ever thrive at Paiko Lagoon is at best hypothetical. As the BLNR found, Paiko Lagoon has never been a nesting site for the Hawaiian Stilt. There is no assurance that these birds can be induced to nest where it has not been known to nest before. And it is uncontradicted that, at present, the planned nesting islands for the Hawaiian Stilts are not suited for that purpose because of the faulty dredging and placement of these islands within the lagoon.

Appellants next contend that the construction, use and occupancy of Appellees' house will curtail the use of the sanctuary as a nature park and educational resource. We find these contentions without merit. We note that the concept and scope of a nature park at Paiko Lagoon has never been considered or approved by the BLNR. To decide the relative effects on a proposed park is, we think, premature. Further, we find that there will be no significant curtailment to the use of the sanctuary as an educational resource since there is no limitation on the accessibility or educational value of the sanctuary.

Accordingly, we hold it was not clearly erroneous for the BLNR to find that the primary and secondary impacts of the proposed construction would probably not have a significant effect on Paiko Lagoon within the meaning of HRS § 343-1(8). Therefore, insofar as Appellees' proposed activities were properly deemed exempt under applicable EIS Regs., we find that the lower court did not err in denying Appellants' request for permanent injunction.

Affirmed.

*John F. Schweigert (Boyce R. Brown, Jr.,* with him on the briefs, *Brown & Bettencourt* of counsel) for plaintiffs-appellants.

*Tamotsu Tanaka (Izumi & Tanaka* of counsel) for defendants-appellees, Rodney Inaba, et al.

*Edwin P. Watson,* Deputy Attorney General, for defendants-appellees, Department of Land & Natural Resources, et al.