WAILUKU SUGAR COMPANY, YUKITAKA ANSAI, and JOHN MURRAY, JR., Plaintiffs-Appellants, *v.* JOSHUA C. AGSALUD, DIRECTOR OF THE DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS, STATE OF HAWAII, Defendant-Appellee

NO. 7965

(CIVIL NO. 4112)

JULY 16, 1982

RICHARDSON, C.J., LUM, PADGETT, HAYASHI, JJ.,
AND RETIRED JUSTICE OGATA IN PLACE OF
ASSOCIATE JUSTICE NAKAMURA, RECUSED

OPINION OF THE COURT BY PADGETT, J.

This is an appeal from an order by the Circuit Court of the Second Circuit affirming two decisions and orders entered by a referee of the Unemployment Compensation Division, Department of Labor and Industrial Relations, State of Hawaii, which determined that the individual appellants were ineligible for trade readjustment allowances under 19 U.S.C. § 2291. We reverse.

The individual appellants were supervisory employees of Wailuku Sugar Company, Limited. Because of the adverse effects of foreign sugar competition in late 1976, Wailuku Sugar Company determined to make a reduction in its work force. The following appears in the transcript of the testimony of Appellant Yukitaka Ansai before the referee:

Q. And at the time Mr. Bowman [Wailuku Sugar Company's manager] talked to you, how many — did he mention how many and who or what positions were going to be eliminated?

A. No. He just said supervisors with the sugar industry would be put out.

Q. How many?

A. He didn't specify how many.

Later on, he testified:

Q. Would they have then — what was the — well, it goes back to the discussion. What was the discussion? They had to what — why was the discussion held with you?

A. Because of the sugar crisis, he [apparently Solzen Yogi, the Industrial Relations man for Wailuku Sugar] said because sugar crisis and reduction of workforce and that they had to layoff so many laborers and so many percentage of supervisors also. So, because of my long years of service he say he didn't want to see the young ones be put out, see? I have the service already so if he offer me, you know, a good pension plan, what, how about taking it because the younger one have young wives and young children going to school yet.

Q. Did he go through all that discussion?

A. Yeah.

Q. That was his presentation?

A. Yeah.

Although his testimony is not consistent, at one point, Appellant John Murray, Jr., testified:

Q. So, what happens if you did not accept this offer?

A. Well, they said they kick . . . either they kick me out or they let me out, either one, see?

Q. So, you had a choice then?

A. I had a choice, yeah?

Q. So, you could have stayed?

A. I could have stayed.

Q. So, as far as the discussion with you it was an optional part. It was a decision for you to make?

A. For me to make.

Q. Why is it that they called in both of you first?

A. We were the only ones that, well, is ready to retire, see?

Q. Okay. So, was there any discussion if you chose not to retire, what would be the consequence?

A. No, they never said anything. We didn't discuss anything about that.

The referee determined that the individual appellants did not qualify for the trade readjustment allowance.

The question presented to us is whether the finding of the referee is "clearly erroneous." Section 91-14(g)(5), HRS.

The standard to be applied is whether the finding was "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." *DeFries v. Association of Owners,* 57 Haw. 296, 555 P.2d 855 (1976). As we said in *DeFries, supra,* at 302:

Under the clearly erroneous standard, this court will reverse findings by the appeals board if this court is left with a definite and firm conviction that a mistake has been made.

On February 28, 1977, a petition on behalf of workers and former workers producing sugar cane and raw sugar on the Wailuku Sugar Company plantation was filed with the Office of the Secretary of the United States Department of Labor in Washington, D.C. by the International Laborers and Warehousemen Union in accordance with 19 U.S.C. § 2272, to seek a formal certification from the Secretary of Labor, certifying that separated or partially separated employees of Wailuku Sugar Company were eligible to apply for worker adjustment assistance benefits under the provisions of 19

U.S.C. § 2291. On June 6, 1977, the Secretary of Labor certified that:

'All workers at the Wailuku Sugar Company ... who became totally or partially separated from employment on or after October 1, 1976 are eligible to apply for adjustment assistance under Title II, Chapter 2 of the Trade Act of 1974.'

In order to be eligible for a trade readjustment allowance, an applicant must be an "adversely affected worker." Title 19 U.S.C. § 2319(2) provides:

The term "adversely affected worker" means an individual who, because of lack of work in adversely affected employment —

(A) has been totally or partially separated from such employment ...

19 U.S.C. § 2294 provides:

Except where inconsistent with the provisions of this part and subject to such regulations as the Secretary may prescribe, the availability and disqualification provisions of the State law —

(1) under which an adversely affected worker is entitled to unemployment insurance (whether or not he has filed a claim for such insurance), or

(2) if he is not so entitled to unemployment insurance, of the State in which he was totally or partially separated,

shall apply to any such worker who files a claim for trade readjustment allowances. ...

Appellee's argument is that the individual appellants could have stayed on as employees of Wailuku Sugar Company despite the reduction in force but voluntarily accepted retirement and hence, would be disqualified from benefits under § 383-30, HRS, which provides:

*Disqualification for benefits.* An individual shall be disqualified from benefits:

(1) Voluntary separation. For any week in which he has left his work voluntarily without good cause, and continuing until he has, subsequent to the week in which the voluntary separation occurred, been employed for at least five consecutive weeks of employment. ...

The referee, in his decisions in the cases of both of the individual appellants, stated:

In determining whether the separation was due to lack of work, the usual question is whether or not the worker could have continued to work if he had elected to do so.

In this case, the employer used a number of ways to have claimant finally agree to retire. However, the employer and claimant agree that claimant could have continued to work had he elected not to retire.

The preponderance of evidence shows that claimant voluntarily quit work and filed for early retirement benefits. His separation was a voluntary leaving. He was not laid off due to lack of work. . . .

Obviously, the referee ignored the whole phrase "voluntarily without good cause" in the statute and concentrated on the word "voluntarily" alone. This is not correct. Compare *Noor v. Agsalud,* 2 Haw. App. 560, 634 P.2d 1058 (1981).

At the time they retired, Rule 5(c) of Regulation II of the Rules and Regulations relating to the Hawaii Employment Security Law, Chapter 383, HRS, provided:

Generally a leaving of work is considered to be for good cause where it is for a real, substantial or compelling reason, or a reason which would cause a reasonable and prudent worker, genuinely and sincerely desirous of maintaining employment to take similar action. Such a worker is expected to try reasonable alternatives to his problems before terminating his employment.

Good cause for leaving employment may be found where there is:

1. Change in working conditions which change is prejudicial or detrimental to the health, safety or morals of the claimant;

2. Change in terms and conditions of employment, including, but not limited to: change in rate of pay, position or grade, duties, days of work, or hours of work;

3. Discrimination which violates federal or state laws regarding equal employment opportunity practices;

4. Change in employee's marital or domestic status;

5. Acceptance of a definite, firm offer made of other employment where the offer is subsequently withdrawn and

the former employer refuses to rehire the employee;

6. Retirement under a mandatory requirement imposed by a collective bargaining agreement; and/or

7. Any other factor relevant to a determination of good cause.

Although the referee stated that the employer and the employees, agreed that claimants could have continued to work had they elected not to retire, we find no testimony from the employer in the record and we do not find, on the whole, that the testimony of the claimants supports that finding.

It is apparent from the record, that some supervisory employees would have been laid off due to the reduction in work force. Given that reality, the company chose to approach the individual appellants and persuade them to step aside in return for a little better pension, appealing to their loyalty to the company and to their concern for younger supervisory employees who had young wives and children to support and who might otherwise be laid off without the appellants' pension advantages. It seems to us, the company acted humanely and wisely.

We distinguish the holdings in *York v. Indiana Employment Security Division*, 425 N.E.2d 707 (Ind. App. 1981) and *Mosqueda v. Commonwealth Unemployment Board*, 431 A.2d 371 (Pa. Commw. 1981), which reached different results. In *York*, it is apparent that the standard of review applied to administrative decisions by the Indiana court was the equivalent of the standard on review of a jury verdict and not the "clearly erroneous" standard required by § 91-14, HRS. In *Mosqueda*, the employee could have entered the employer's apprenticeship program had he so chosen. The evidence here, in our view, does not establish the existence of the alternative of continued employment despite the referee's finding that it does.

The record leaves us convinced that the retirement of the claimants was due to pressure and persuasion on the part of the employer, and to the circumstances, rather than voluntary, and that there were real, substantial and compelling reasons which would cause the employees, who were sincerely desirous of maintaining employment, to retire. We are left with the definite and firm conviction that a mistake was made by the referee in holding that appellants were not "adversely affected workers," because, on the record, that the

152

appellants did not leave their employment voluntarily without good cause.

Accordingly, the judgment below is reversed.

*Richard M. Rand* and *Ernest C. Moore, III,* on the briefs *(Torkildson, Katz, Jossem & Loden* of counsel) for appellants.

*Edward L. Correa, Jr.,* Deputy Attorney General, on the brief for appellee.