JERELENE M. AIO, PAULA CHAMBERS, DEBORAH
M. C. CHU, ANN K. CORUM, VAN E. CORUM, JR.,
SHARON DUMAS, HARRY M. GREENWOOD, III,
FLORENCE M. HAYSLIP, DONALD FREDERICK
JENSEN, JOANNE C. KAPAHUA, HAROLD W.
KUHA, LINDA M. McLEAN, and E. PAUL VOS-
BURGH, Appellants, *v.* MACK H. HAMADA, JOHN E.
MILLIGAN, and JAMES K. CLARK, members of the
State of Hawaii Public Employment Relations Board; and
HAWAII STATE TEACHERS ASSOCIATION, NEA,
Appellees

NO. 8663

(CIVIL NO. 62067)

JUNE 3, 1983

LUM, C.J., NAKAMURA, PADGETT, AND HAYASHI, JJ.,
AND CIRCUIT JUDGE GREIG ASSIGNED
BY REASON OF VACANCY

OPINION OF THE COURT BY NAKAMURA, J.

The Hawaii Public Employment Relations Board (HPERB), concluding that no wilful violations of HRS § 89-13 had been committed by the Hawaii State Teachers Association (HSTA), dismissed the prohibited practice complaints brought by thirteen public school teachers. HPERB's findings of fact, conclusions of law, and order dismissing the complaints were affirmed by the First Circuit Court, and the teachers have sought further judicial review of the administrative decision. After a thorough examination of the record, we likewise arrive at a decision that HPERB's findings and its construction of applicable statutory provisions are not clearly erroneous.

I.

Under the system for collective bargaining in the public sector authorized by HRS Chapter 89, public employees are accorded "the right of self-organization and the right to form, join, or assist any employee organization for the purpose of bargaining collectively."[1] But employees are also free "to

---

[1] Prior to 1981 and during the period covered by this appeal, HRS § 89-3 read:

Rights of employees. Employees shall have the right of self-organization and the right to form, join, or assist any employee organization for the purpose of bargaining collectively through representatives of their own choosing on questions of wages, hours, and other terms and conditions of employment, and to engage in lawful, concerted activities for the purpose of collective bargaining or other mutual aid or protection, free from interference, restraint, or coercion. An employee shall have the right to refrain from any or all of such activities, except to the extent of making such payment of service fees to an exclusive representative as provided in section 89-4.

refrain from any or all . . . activities [related to collective bargaining], except to the extent of making . . . payment of service fees to an exclusive representative [of an appropriate bargaining unit] as provided in section 89-4."[2]

The thirteen teachers who have appealed belong to Bargaining Unit 5, which has been designated an appropriate unit for collective bargaining pursuant to HRS § 89-6, and HSTA

---

HRS § 89-3 was amended in 1981 and now reads:

Rights of employees. Employees shall have the right of self-organization and the right to form, join, or assist any employee organization for the purpose of bargaining collectively through representatives of their own choosing on questions of wages, hours, and other terms and conditions of employment, and to engage in lawful, concerted activities for the purpose of collective bargaining or other mutual aid or protection, free from interference, restraint, or coercion. An employee shall have the right to refrain from any or all of such activities, except to the extent of making such payment of amounts equivalent to regular dues to an exclusive representative as provided in section 89-4.

[2] Prior to 1981 and during the period covered by this appeal, HRS § 89-4(a) stated: The employer shall, upon receiving from an exclusive representative a written statement which specifies an amount of reasonable service fees necessary to defray the costs for its services rendered in negotiating and administering an agreement and computed on a pro rata basis among all employees within its appropriate bargaining unit, deduct from the payroll of every employee in the appropriate bargaining unit the amount of service fees and remit the amount to the exclusive representative. A deduction permitted by this section, as determined by the board to be reasonable, shall extend to any employee organization chosen as the exclusive representative of an appropriate bargaining unit. If an employee organization is no longer the exclusive representative of the appropriate bargaining unit, the deduction shall terminate.

HRS § 89-4(a) was amended in 1981 and 1982 and now states:

Upon receiving from an exclusive representative a written statement specifying the amount of regular dues required of its members in the appropriate bargaining unit, the employer shall deduct this amount from the payroll of every member employee in the appropriate bargaining unit and remit the amount to the exclusive representative. Additionally, the employer shall deduct an amount equivalent to the regular dues from the payroll of every nonmember employee in the appropriate bargaining unit, and shall remit the amount to the exclusive representative; provided that the deduction from the payroll of every nonmember employee shall be made only for an exclusive representative which provides for a procedure for determining the amount of a refund to any employee who demands the return of any part of the deduction which represents the employees' pro rata share of expenditures made by the exclusive representative for activities of a political and ideological nature unrelated to terms and conditions of employment. If a nonmember employee objects to the amount to be refunded, he may petition the board for review thereof within fifteen days after notice of the refund has been received. If an employee organization is no longer the exclusive representative of the appropriate bargaining unit, the deduction from the payroll of members and nonmembers shall terminate.

has been chosen by a majority of the members therein as the exclusive representative of the unit. Although twelve of the thirteen teachers did not belong to the employee organization during relevant times, all of them were nevertheless subject to the payroll deductions for "reasonable service fees necessary to defray the costs for . . . services rendered [by HSTA] in negotiating and administering . . . [the collective-bargaining] agreement" on behalf of the bargaining unit. *See* note 2 *supra*.

On January 13, 1978, each appellant filed a prohibited practice complaint with HPERB, alleging HSTA had, since July 1976,[3] improperly expended moneys received as service fees for partisan political and union membership purposes in violation of HRS § 89-13(b)(1) and 89-13(b)(4).[4] The specific remedy sought was either reimbursement or·credit for any portion of the service fees disbursed in violation of HRS § 89-13.

The hearing on the complaints commenced shortly thereafter. After conducting several sessions, HPERB continued the case in order to consider HSTA's Petition for Modification of Service Fee, which sought an increase in the service fees payable by employees in Bargaining Unit 5 for the fiscal year

---

[3] The procedural aspects of controversies related to prohibited practices are governed by HRS § 377-9. *See* HRS § 89-14. HRS § 377-9(1) precludes the consideration of prohibited practices unless they have occurred within ninety days of the filing of the complaint. Since appellants filed their complaints on January 13, 1978, HPERB could only consider the practices alleged to have occurred on or after October 15, 1977.

[4] HRS § 89-13, in relevant part, provides:
Prohibited practices; evidence of bad faith. . . .

. . . . .

(b) It shall be a prohibited practice for a public employee or for an employee organization or its designated agent wilfully to:
(1) Interfere, restrain, or coerce any employee in the exercise of any right guaranteed under this chapter;
(2) Refuse to bargain collectively in good faith with the public employer, if it is an exclusive representative, as required in section 89-9;
(3) Refuse to participate in good faith in the mediation, fact-finding and arbitration procedures set forth in section 89-11;
(4) Refuse or fail to comply with any provision of this chapter; or
(5) Violate the terms of a collective bargaining agreement.

beginning July 1, 1978.[5] The requested raise in fees was approved in November of 1978, and the Board subsequently resumed the continued hearing. HPERB Decision 129, the subject of this appeal, was issued on June 13, 1980. The decision, a fifty-two page document, consisted of detailed findings of fact and lengthy conclusions of law. Though HPERB found "HSTA made expenditures out of service fees during the subject period in program areas clearly outside the scope of permissible service fee expenditures," it nonetheless concluded

that no prohibited practices as described in Subsection 89-13(b)(1) and (4), HRS, have occurred for the reasons that no willful violations of Complainant employees' rights have occurred such as would make out a case under Subsection 89-13(b)(1), and no unreasonable expenditures of service fee monies have willfully been undertaken such as would make out a case under Subsection 89-13(b)(4).

HPERB therefore dismissed the complaints.

An appeal of the decision to the circuit court followed, and the court upon review of the record affirmed the decision in all respects. A timely request for further judicial review was perfected.

The questions posed on the appeal to this court are: (1) whether HPERB erred in concluding HSTA's legislative and Constitutional Convention (Con-Con) lobbying efforts during the relevant period were confined to areas directly related to teachers' working conditions and therefore were chargeable to HSTA's service fee account; (2) whether HPERB erred in holding certain articles and editorials that appeared in various issues of the organization's news organ, Teacher Advocate, were political news items rather than candidate endorsements and therefore chargeable to the service fee account; (3) whether HPERB incorrectly interpreted the term "wilfully" as it appears in HRS § 89-13(b); and (4) whether HPERB erred in concluding certain expenditures made by HSTA did not

---

[5] The parties apparently agreed with the Board that a continuance was in order. The appellants, for example, "thought that the decision in the service fee case would help to clarify the charges in the prohibited practice case."

amount to violations of HRS § 89-13(b)(1) and 89-13(b)(4) because they were not made with "conscious, knowing, and deliberate intent" to violate HRS Chapter 89.

## II.

Judicial review of decisions rendered by administrative tribunals like HPERB is governed by the Administrative Procedure Act, which in pertinent part provides that:

Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

. . . .

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record.

HRS § 91-14(g). Under the clearly erroneous test articulated above, a reviewing court will not disturb agency findings and conclusions unless it is left, after examining the record, with a "definite and firm conviction that a mistake has been made." *DeFries v. Association of Owners,* 57 Haw. 296, 302, 555 P.2d 855, 859 (1976); *see also Wailuku Sugar Co. v. Agsalud,* 65 Haw. 146, 148, 648 P.2d 1107, 1110 (1982); *McGlone v. Inaba,* 64 Haw. 27, 34, 636 P.2d 158, 163 (1981); *In re Hawaii Electric Light Co.,* 60 Haw. 625, 629, 594 P.2d 612, 616-17 (1979); *In re Kauai Electric Division of Citizens Utility Co.,* 60 Haw. 166, 186, 590 P.2d 524, 538 (1978).

We have further acknowledged that "[i]n order to preserve the function of administrative agencies in discharging their delegated duties and the function of this court in reviewing agency determinations, a presumption of validity is accorded to decisions of administrative bodies acting within their sphere of expertise." *In re Hawaii Electric Light Co.,* 60 Haw. at 630, 594 P.2d at 617. Judicial deference to agency expertise has also been a guiding precept where the interpretation and application of broad or ambiguous statutory language by an administrative tribunal are the subject of review. For we have

recognized the wisdom of

> a well established rule of statutory construction that, where an administrative agency is charged with the responsibility of carrying out the mandate of a statute which contains words of broad and indefinite meaning, courts accord persuasive weight to administrative construction and follow the same, unless the construction is palpably erroneous. *Estrin v. Moss,* 221 Tenn. 657, 430 S.W.2d 345 (1968); *Udall v. Tallman,* 380 U.S. 1 (1965); *Norwegian Nitrogen Products Co. v. United States,* 288 U.S. 294 (1933).

*Treloar v. Swinerton & Walberg Co.,* 65 Haw. 415, 424, 653 P.2d 420, 426 (1982) (quoting *Waikiki Resort Hotel v. City & County,* 63 Haw. 222, 242-43, 624 P.2d 1353, 1368 (1981)).

The voluminous record proffered for our scrutiny discloses the circuit court was indeed mindful of the standard for judging agency determinations.

### III.

Appellants, however, urge the circuit court nevertheless erred in affirming HPERB's decision that HSTA's expenditures for lobbying, other than those related to efforts directed toward securing legislative ratification of collective bargaining agreements, were permissible uses of service fees. They strenuously argue the court also erred when it affirmed the agency determination that expenses covering the publication of certain articles and editorials in the Teacher Advocate, political in nature, were still permissible expenditures of service fee moneys. But we are convinced from our own review that the foregoing HPERB rulings are reasonable and not clearly erroneous.

In its discussion of the line of demarcation between permissible and impermissible uses of service fees by employee organizations in Decision 129, HPERB noted it had previously expounded at length on the issue. The decision underscored what had been emphasized in HPERB Decisions 94, 78, and 7 with respect to the crucial statutory language, "costs for . . . services rendered in negotiating and administering an agreement." That the Board viewed the phrase as "a term of art . . . [describing] a complex, comprehensive ongoing process of

union representation of all employees in the bargaining unit" was reiterated.[6] And the task of separating allowable costs from the "so-called 'union membership' costs" was characterized again as "almost impossible."[7] We would have to agree that the duty of allocation delegated to HPERB by the legislature is by no means simple and may be well-nigh impossible. For as the Supreme Court has observed, "[t]here will, of course, be difficult problems in drawing lines between collective-bargaining activities, for which contributions may be compelled, and ideological activities unrelated to collective bargaining, for which such compulsion is prohibited." *Abood v. Detroit Board of Education,* 431 U.S. 209, 236 (1977). Moreover, "in the public sector the line may be somewhat hazier" than in the private. *Id.*

We have combed through the record with these considerations and the statutory standard of review in mind to decide whether there is merit in appellants' assertion that the chronicle

----

[6] Decision 94 was quoted to the following effect:

This Board believes that the statutory phrase "negotiating and administering an agreement" is used as a term of art to describe a complex, comprehensive ongoing process of union representation of all employees in the bargaining unit. The phrase embraces activities which go beyond, but are reasonably related to, direct across the table negotiations and grievance processing. Such activities, at minimum, include all of the statutory representational duties imposed on exclusive representatives by Subsections 89-9(a) [negotiations], 89-9(c) [consultation on employment matters including those which may be nonnegotiable under 89-9(d)], and 89-8(a), HRS.

[7] The following excerpt from Decision 7 was quoted in Decision 129:

In the final analysis, this almost impossible task of allocation can be best approached and undertaken by a process of exclusion of so-called 'union membership benefit' costs from the total costs of operations as the statutory language seems to suggest. The approach suggested by the AFT of limiting allowable costs to direct-contact negotiations and bargaining must therefore be refused. We view the words 'negotiating and administering an agreement' as a term of art which generally encompasses the entire collective bargaining and representation activities of the representative with the employer, including all preliminary planning, preparation, training, budgeting and organizational efforts and 'tooling up' process related to a negotiating contract and administering the same after its consummation. It virtually amounts to a residuum of the union's total activities after the 'union membership benefits' have been isolated and removed. This is the 'fair share' of the collective bargaining costs to be reflected in the service fee. (Emphasis added in original quote). 1 HPERB 708-709.

of proceedings before the Board cannot sustain the decisions reached by HPERB and the circuit court. But the record gives no support to this claim. Rather, we are convinced by our reading thereof that HPERB's findings and conclusions regarding HSTA's lobbying activities and publication of news articles and editorials in the Teacher Advocate are reasonable and supportable. The obvious mistake demanded for reversal of an agency decision does not appear. HRS § 91-14(g); *see also In re Hawaii Electric Light Co.,* 60 Haw. at 630, 594 P.2d at 617; *In re Kauai Electric Division of Citizens Utility Co.,* 60 Haw. at 187, 590 P.2d at 538.

## IV.

Turning to appellants' assertion that HPERB incorrectly interpreted "wilfully" as it is employed in HRS § 89-13(b), we observe at the outset that the related legislative history is devoid of any reference thereto. HPERB thus logically sought aid from a dictionary, and relying on the discussion of the pertinent term in *Black's Law Dictionary,*[8] ruled "that to make

---

[8] *Black's Law Dictionary* defines and discusses "willful" in these terms:

Willful. Proceeding from a conscious motion of the will; voluntary. Intending the result which actually comes to pass; designed; intentional; not accidental or involuntary.

*An act or omission is "willfully" done, if done voluntarily and intentionally and with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or to disregard the law.*

Willful is a word of many meanings, its construction often influenced by its context. Screws v. United States, 325 U.S. 91, 101, 65 S.Ct. 1031, 1035, 89 L.Ed. 1495.

The word [willfully] often denotes an act which is intentional, or knowing, or voluntary, as distinguished from accidental. But when used in a criminal context it generally means an act done with a bad purpose; without justifiable excuse; stubbornly, obstinately, perversely. *The word is also employed to characterize a thing done without ground for believing it is lawful or conduct marked by a careless disregard whether or not one has the right so to act.* United States v. Murdock, 290 U.S. 389, 394, 395, 54 S.Ct. 223, 225, 78 L.Ed. 381.

Whatever the grade of the offense the presence of the word "willful" in the definition will carry with it the implication that for guilt the act must have been done willingly rather than under compulsion and, if something is required to be done by statute, the implication that a punishable omission must be by one having

out a prohibited practice under Subsection 89-13(b), HRS, conscious, knowing, and deliberate intent to violate the provisions of chapter 89, HRS, must be proven." We have no reason to reject the construction.

Though appellants forcefully argue an act committed "voluntarily" and "with plain indifference" to the law can only be one "wilfully" committed, we are not persuaded that the crucial word can only be read as they suggest. We earlier noted a presumption of validity attaches to decisions of administrative bodies "acting within their sphere of expertise." *In re Hawaii Electric Light Co.,* 60 Haw. at 630, 594 P.2d at 617. HPERB is empowered pursuant to HRS § 89-1 to administer HRS Chapter 89, Collective Bargaining in Public Employment, with specific authority to "[c]onduct proceedings on complaints of prohibited practices . . . and take such actions with respect thereto as it deems necessary and proper." HRS § 89-5(b)(4). Furthermore, we customarily accord persuasive weight to the construction given words of broad and indefinite meaning by the agency charged with the responsibility of carrying out the mandate of the statute in question, unless the construction is palpably erroneous. *Treloar v. Swinerton & Walberg Co.,* 65 Haw. at 424, 653 P.2d at 426. We do not find HPERB's reading of "wilfully" to be so.

V.

The remaining question is whether HPERB erred in holding that while HSTA made disbursements "out of service fees

---

the ability and means to perform. In re Trombley, 31 Cal.2d 801, 807, 193 P.2d 734, 739.

    *A willful act may be described as one done intentionally, knowingly, and purposely, without justifiable excuse, as distinguished from an act done carelessly, thoughtlessly, heedlessly, or inadvertently. A willful act differs essentially from a negligent act. The one is positive and the other negative.*

    Premeditated; malicious; done with evil intent, or with a bad motive or purpose, or with indifference to the natural consequences; unlawful; without legal justification.

*Black's Law Dictionary* 1434 (5th ed. 1979) (emphasis added by HPERB in Decision 129).

during the subject period in program areas clearly outside the scope of permissible service fee expenditures,"[9] no prohibited practices resulted because "no willful violations of Complainant employees' rights have occurred such as would make out a case under Subsection 89-13(b)(1), and no unreasonable expenditures . . . have willfully been undertaken such as would make out a case under Subsection 89-13(b)(4)."

If anything is certain in the area of present concern, it is that difficult problems are encountered "in drawing lines between collective-bargaining activities . . . and ideological activities unrelated to collective bargaining." *Abood v. Detroit Board of Education,* 431 U.S. at 236. The agency officially charged with the task of drawing the lines here has deemed it an "almost impossible" one. We therefore cannot expect that such lines would be readily discernible, particularly where the permissible and the impermissible have not been clearly distinguished by prior decision. And when we apply the clearly erroneous test in the haze of uncertain statutory language, we too are left with an impression that the disbursements in question were not made with "conscious, knowing, and deliberate intent to violate the provisions of Chapter 89, HRS."

The decision of the circuit court is affirmed.

*Jared H. Jossem (Roger W. Fonseca & Gregory M. Sato* with him on the briefs; *Torkildson, Katz, Jossem & Loden,* of counsel) for appellants.

*T. Anthony Gill (Thomas P. Gill* on the brief; *Gill, Park, Park & Kim,* of counsel) for appellee HSTA.

*Glenn D. Choy* for appellee HPERB

---

[9] The program areas where the questionable expenditures occurred included programs designed "To Develop and Maintain a Grass-Roots Political Apparatus Which Includes a Precinct Level Organization," "To Elect to Public Office Those Who Have Proven or Stand to Prove That They Support the Goals and Objectives of HSTA," and "To Increase the Membership."

HSTA charged some of the expenses connected with the programs to its service fee account.

CONCURRING OPINION BY PADGETT, J.

I concur in the above opinion.

As the opinion notes, HPERB found that HSTA made disbursements "out of service fees during the subject period in program areas clearly outside the scope of permissible service fee expenditures." I write this concurring opinion to make clear that the appellants have not, in these proceedings, properly raised any contention that those improper expenditures violated their rights under the State and Federal Constitutions. *Compare Abood v. Detroit Bd. of Education,* 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977); *International Ass'n of Machinists v. Street,* 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961).

On an examination of the record, it is clear that no such issue was raised by appellants in their pleadings in the court below. Moreover, on the eve of oral argument, appellants filed a document entitled "Notice of Pending Federal Cases and Reservation of Rights Under Federal Law" making clear that they did not desire to submit such issues to this court. Accordingly, no constitutional issue is before us in this case.