**JOHN T. VAIL**, Plaintiff–Appellee, v. **EMPLOYEES' RETIREMENT SYSTEM OF THE STATE OF HAWAI'I**, Defendant–Appellant

NO. 16196

(CIV. NOS. 90–0409(3) & 90–0680(1))

AUGUST 12, 1993

MOON, C.J., KLEIN, LEVINSON, AND NAKAYAMA, JJ., AND CIRCUIT JUDGE MILKS, IN PLACE OF RAMIL, J., RECUSED

## OPINION OF THE COURT BY MOON, C.J.

Plaintiff-appellee John T. Vail (Vail) claimed that he had earned full–time membership credit in defendant–appellant State of Hawai'i's Employees' Retirement System (ERS) as a result of his service as a per diem district court judge. The ERS disagreed, and filed a declaratory order denying Vail's petition for full–time membership credit. Vail appealed the ERS ruling to the State circuit court, which reversed the ERS's order and held that Vail was eligible for full–time credit.

The ERS now appeals to this court from the order of the circuit court, arguing that 1) Vail's lawsuit was time–barred under Hawai'i Revised Statutes (HRS) § 661–5; 2) Vail's claim would violate the State's retirement law; and 3) the ERS has the express authority to deny membership to part–time employees, and per diem judges, like Vail, are also subject to this authority.

Although we conclude that Vail's lawsuit was not time–barred under HRS § 661–5, we also conclude that Vail's claim would violate the State's retirement law, and that the ERS possesses the statutory authority to deny Vail full–time membership credit. We therefore vacate the circuit court's order and reinstate the declaratory order of the ERS.

## I. BACKGROUND

The ERS, established under HRS chapter 88, Pension and Retirement Systems, is administered by the Board of Trustees of the ERS (Board) and provides retirement benefits to state and county workers. HRS §§ 88–22 and 88–23.

This appeal focuses on certain provisions of HRS chapter 88, an ERS administrative rule governing membership in the system, and the methods of calculating the membership service of differently situated employees. Specifically, Vail, who is currently a State district court judge, claims that he earned full–time membership service credit for the period he spent as a per diem judge (1981–1989), pursuant to HRS § 88–42, which provides in relevant part:

> **Membership generally.** Except as otherwise provided in this part, all employees . . . shall be members of the system[.]
>
> Per diem workers shall become eligible for membership on January 1, 1952, and all persons who are employed as per diem workers after December 31, 1951, shall become members of the system.

Conversely, ERS maintains that it had the authority under HRS § 88–43 and its own administrative rule § 6–21–14 to deny membership to Vail because, during much of the period of his per diem judgeship, Vail was only a part–time employee. HRS § 88–43 provides in pertinent part: "The board of trustees may deny membership to any class of part–time employees[.]" Rule § 6–21–14, promulgated to implement HRS § 88–43, provides in relevant part:

The following classes of employees shall be excluded from membership in the system:

. . . .

(5) Persons in any position requiring less than one–half of full–time employment[.]

. . . .

(7) Persons employed in any position where employment is casual or intermittent and the percentage of full–time equivalence is indeterminate; provided that after at least three months, any person whose employment has been determined to average twenty or more hours per week shall be included in the membership of the system[.]

The ERS claims that under subsections (5) and (7) of Rule § 6–21–14, Vail did not qualify as a member of the system for at least some of the time he served as a per diem judge. Vail counters that HRS § 88–43 does not apply to the category of per diem workers who are specifically provided for in HRS § 88–42, and who therefore cannot be considered a class of part–time workers under the statute.

On August 23, 1984, Vail wrote to the ERS concerning the cost of "buying back" service credit, which he had earlier voluntarily forfeited by withdrawing his accumulated contributions from the system. Vail had previously been a member of the ERS and earned service credit for a combined period of approximately three years while serving as both a deputy corporation counsel and a deputy prosecuting attorney in Honolulu in the early 1960's, and as a Maui County councilman in the early 1980's.

Additionally, since 1981, Vail had been serving as a per diem district court judge on Maui, and in the August 23 letter, he also inquired about his eligibility to rejoin the system under HRS § 88–42. On December 26, 1984, the

ERS responded to Vail's letter informing him that, according to ERS Rule § 6–21–14, as a part–time employee, he did not qualify for membership in the system. On January 14, 1985, Vail wrote to the ERS disputing its interpretation of HRS § 88–42 and, implicitly, its implementation of HRS § 88–43 through Rule § 6–21–14. Vail suggested that the ERS request an opinion on the matter from the State Attorney General, indicating that he (Vail) thought this "a more viable option than my filing a lawsuit for declaratory judgment."

The record does not reflect a response by the ERS to Vail's request. In December 1988, Vail wrote to the ERS and claimed full–time membership credit for the entire period of his per diem judgeship since 1981 (Vail had been reappointed in 1986 and 1988). Shortly thereafter, Vail again wrote to the ERS and requested a declaratory order from the agency as to the applicability of HRS § 88–42 to his situation. The ERS did not reply.

Vail was appointed to a six–year term as a regular district court judge, effective April 28, 1989. He subsequently wrote twice more to the ERS in May 1989 regarding his request for a declaratory order. The ERS responded on May 16 by sending Vail a copy of the administrative rules, which the agency considered pertinent to Vail's case, along with a copy of the ERS procedures for petitioning an agency ruling. Vail responded by again requesting the ERS seek an opinion from the Attorney General. He stated that he did "not want to make a fuss over it but there is much at stake and if necessary I'll have to go to court." The ERS did not respond.

On July 3, 1989, Vail wrote to the ERS again requesting the agency procure an opinion on his case from the Attorney General. The ERS did not respond. On July 17, pursuant to ERS administrative rules, Vail formally

petitioned the ERS for full–time membership credit for the entire period of his former per diem judgeship under HRS § 88–42. Vail also implicitly sought an ERS declaration that per diem workers are not subject to the agency's authority to deny membership to part–time employees pursuant to HRS § 88–43. On September 6, the ERS responded to Vail's letter of July 3, informing him that an Attorney General's opinion had been requested.

In an opinion letter dated January 4, 1990, the Attorney General essentially agreed with the ERS that HRS § 88–43 authorized the agency to exclude any class of part–time employees, including per diem workers, from membership in the system. On January 29, 1990, the ERS informed Vail of the Attorney General's opinion and that his petition would be presented to the Board at their February meeting. However, in a letter dated April 20, 1990, Vail was advised by the ERS that the Board would not be taking any action on his petition and that "[a]t this point, the only course of action would be appealing [sic] to the circuit court."

On May 11, 1990, the ERS informed Vail that, according to its calculations, for the period between March 1, 1985 and April 27, 1989, he was to be credited with a total of seventeen months of membership in the ERS. The ERS explained that Vail received a certain specific percentage of full–time credit for any month in which he had worked more than half–time (ten days). For example, if he had worked twelve days out of the twenty working days in a month, he would have received sixty percent service credit for that month. He would receive no credit for any month in which he worked fewer than ten days.[1]

---

[1] The ERS did not specify the authority under which it made these calculations. However, it appears that the ERS utilized Rule

On July 18, 1990, the ERS informed Vail by letter that, contrary to the agency's April 20 letter, his petition would be presented to the Board on July 23, 1990. However, on July 26, 1990, Vail filed a complaint for declaratory judgment in the Second Circuit Court (first lawsuit), essentially asking the court to find that as a per diem employee he had qualified for full–time membership in the system under HRS § 88–42, and that the ERS had no authority under HRS § 88–43 to exclude him as a part–time employee.

Meanwhile, the Board voted on July 23 to deny Vail's petition. On November 8, 1990, the ERS filed a declaratory order, pursuant to HRS § 91–8,[2] denying Vail's petition and making the following relevant conclusions of law:

---

§ 6–21–14(5) for its authority because that subsection of the rule states that "[p]ersons in any position requiring less than one–half of full–time employment" are excluded from membership in the system, and thus, it follows that persons who hold positions requiring more than one–half of full–time employment are members of the system, notwithstanding the fact that they may never, or only intermittently, be employed full–time.

[2] HRS § 91–8 provides:

> Any interested person may petition an agency for a declaratory order as to the applicability of any statutory provision or any rule or order of the agency. Each agency shall adopt rules prescribing the form of the petitions and the procedure for their submission, consideration, and prompt disposition. Orders disposing of petitions in such cases shall have the same status as other agency orders.

The ERS also stated that its declaratory order was final and therefore appealable by Vail "in accordance with section 91–14[(a),]" which provides in relevant part that "[a]ny person aggrieved by a final decision and order in a contested case . . . is entitled to judicial review thereof under this chapter[.]"

5. Per diem employees, including per diem judges, are a "class of part–time employees or persons engaged in temporary employment of three months or less," which the Board may deny membership in the ERS pursuant to section 88–43, Hawai'i Revised Statutes.

6. Section 6–21–14(7), *Hawai'i Administrative Rules*, was promulgated to implement section 88–43. It applies to all employees including per diem employees.

7. Petitioner is not entitled to claim or acquire membership service on a full–time basis (*i.e.* 100%) for the period of time he served as a per diem judge. He is only entitled to entire membership services for the time if he was paid for full–time service.

On November 14, 1990, the ERS forwarded a copy of the November 8 order to Vail.

On December 6, 1990, pursuant to HRS § 91–14,[3] Vail filed a complaint for judicial review of the Board's declaratory order in the Second Circuit Court (second lawsuit). On January 3, 1991, Vail filed an amended complaint in the first lawsuit, adding a claim for judicial review of the ERS declaratory order to his claim for declaratory judgment. On September 25, 1991, Vail moved to consolidate both lawsuits; however, the record does not reflect that the court ever acted on this motion. Nevertheless, the court thereafter in effect treated the two cases as one for judicial review of the ERS declaratory order.[4]

---

[3] *See supra* note 2.

[4] Neither the parties nor the court ever subsequently addressed Vail's claim for declaratory judgment in the first lawsuit, although the

On May 7, 1992, the circuit court issued its decision regarding Vail's complaint for judicial review and reversed the ERS's order of November 8, 1990. The court made the following rulings:

A. The ERS's Conclusions of Law numbered 5, 6, and 7 are clearly erroneous and violated [HRS] § 88–42.

B. The ERS's Declaratory Order filed herein on November 8, 1990, is clearly erroneous and violates the Hawai'i Revised Statutes.

C. The ERS's Declaratory Order filed herein on November 8, 1990, is reversed, and the ERS is directed to admit the Appellant as a member of the ERS during the period from February 25, 1981, to April 27, 1989, and to grant him a total of ninety–six (96) months and two (2) days of service credit (inclusive of the service credit already accorded to the Appellant during said period), whereby the Appellant shall receive one (1) month of service credit for each month of his tenure as a per diem judge, regardless of the actual number of days that he may have been sitting as a judge and been compensated for in any particular month during such period.

The ERS has now appealed the circuit court's order reversing its November 8, 1990 declaratory order.[5]

_____

case numbers assigned to each case continued to appear on all captions to the various documents filed, including the circuit court's decision in the case and the notice of appeal document filed with this court.

[5] As previously noted, although the circuit court apparently never formally acted on Vail's motion to consolidate both lawsuits, it nevertheless appears to have effectively treated them as one. *See supra* note

## II. DISCUSSION

### A. The ERS's Claim That Vail's Claim Was Time–Barred

In its opposition to Vail's appeal to the circuit court of its declaratory order, the ERS argued that Vail's lawsuit for judicial review of its decision was barred by HRS § 661–5, which provides in relevant part that "[e]very claim against the State, cognizable under [chapter 661], shall be forever barred unless the action is commenced within two years after the claim first accrue[d.]" The jurisdictional section of chapter 661, HRS § 661–1, provides in relevant part:

> The several circuit courts of the State and, except as otherwise provided by statute or rule, the several state district courts shall . . . have original jurisdiction to hear and determine the following matters . . . .
>
> (1) All claims against the State founded upon any statute of the State; or upon any regulation of an executive department[.]

The ERS claims that by reversing its declaratory order and directing the agency to give Vail full–time credit for his per diem judgeship, the circuit court implicitly

---

4. The court's May 7, 1992 decision purportedly includes both lawsuits even though that order only decided Vail's second lawsuit and was silent with respect to the first lawsuit. Because no formal action was ever taken on the consolidation matter, no final judgment can be said to have been rendered regarding the declaratory judgment portion of that case. Consequently, this court does not have appellate jurisdiction over the first lawsuit and must, therefore, dismiss the appeal of the first lawsuit for want of appellate jurisdiction. However, because Vail's claims for declaratory judgment in the first lawsuit are based on precisely the same issues as in the second lawsuit, our decision on the second lawsuit renders the first moot.

ruled that HRS § 661–5 does not apply to the present case. On appeal to this court, the ERS now renews its claim that the proper application of HRS § 661–5 should bar any consideration of Vail's lawsuit. The construction of a statute, in this case HRS § 661–5, is a question of law which this court reviews under the right/wrong standard. *Amfac, Inc. v. Waikiki Beachcomber Investment Co.*, 74 Haw. 85, 119, 839 P.2d 10, 28, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992).

The ERS contends that because Vail's claim was clearly founded upon a State statute, that is, HRS § 88–42, Vail was required to file his lawsuit within two years of the accrual of his claim. The ERS maintains that Vail's claim "accrued" in 1984; therefore, because Vail did not bring suit until 1990, Vail's suit was barred under HRS § 661–5.

Conversely, Vail argues that because the State is not a party to his lawsuit against the ERS, chapter 661 does not apply. We disagree. Pursuant to HRS § 26–8, the ERS is expressly placed for administrative purposes within the Department of Budget and Finance (DBF), one of the principal executive and administrative departments of the State of Hawai'i. HRS § 26–4. Pursuant to HRS § 26–35, the head of the DBF represents the ERS in all "communications with the governor and with the legislature;" the financial requirements of the ERS are included in the DBF budget; all rules and regulations of the ERS are subject to approval by the governor; and all "employment, appointment, promotion, transfer, demotion, discharge, and job descriptions of all officers and employees" of the ERS are subject to the approval of the head of the DBF. In short, Vail's lawsuit against the ERS is obviously cognizable under chapter 661 as a claim against the State of Hawai'i.

The ERS contends that Vail's claim accrued in 1984 when Vail originally wrote to the ERS seeking to buy back service credit, which he had previously forfeited. Specifically, the ERS maintains that Vail's claim accrued on December 26, 1984, when the ERS informed Vail that he was not eligible for membership, pursuant to ERS Rule § 6–21–14. We note, however, that the ERS was responding to Vail's letter of August 23, 1984, wherein Vail stated that "[i]t would appear that I am eligible to join [the system] under Sec. 88–42[.] If so, I would like to join. Please advise me if I am eligible and, if not, what must be done to make me eligible." Clearly, Vail was not yet requesting membership in the system; rather, he was inquiring into his eligibility to join.

As previously detailed, subsequent to the ERS's letter of December 26, Vail again wrote to the ERS on January 14, 1985, contesting its interpretation of HRS § 88–42 and suggesting that the agency "procure an opinion from the Attorney General," which Vail believed was "a more viable option than my filing a lawsuit for declaratory action." The ERS argues that Vail's reference to a possible lawsuit proves that his claim against the State had accrued as of its December 26 letter to Vail.

The agency failed to respond to Vail's January 14 letter, and there were no further communications between the parties until December 1988, when Vail for the first time actually requested — "insisted" — that he be admitted to membership in the system as a per diem judge. Vail then unsuccessfully asked several times for an agency declaratory order, and finally petitioned the ERS for full–time membership in the system on July 17, 1989.

The ERS claims that as of December 26, 1984, Vail "knew or should have known that an actionable wrong

ha[d] been committed" against him. The ERS correctly states the applicable law regarding the HRS § 661–5 phrase "after the claim first accrued." In *Waugh v. University of Hawai'i*, 63 Haw. 117, 621 P.2d 957 (1980), we held that a claim first accrues under HRS § 661–5 when "appellant knew, or reasonably should have known, that an actionable wrong ha[s] been committed[.]" *Id.* at 128, 621 P.2d at 966. In *Waugh*, scientific equipment and research material belonging to the plaintiff–appellant, a chemistry professor, had been destroyed while the professor was on sabbatical leave. When the professor returned from leave, in late September 1970, he discovered at least part of the loss, but he did not actually bring suit against the university until March 1973, following unsuccessful attempts to resolve the problem through university administrative channels. *Id.* at 120–24, 621 P.2d at 962–64.

The circuit court ruled that the professor's suit was barred under HRS § 661–5 because more than the statutory period of two years had passed since the professor had discovered at least part of his loss upon his return from sabbatical. This court affirmed, concluding that the discovery of the partial loss was enough to alert the professor that "an actionable wrong had been committed against his property." *Id.* at 128, 621 P.2d at 966.

The issue presented by the present case is whether the ERS's December 26, 1984 letter to Vail was sufficient to alert him that an actionable wrong had been committed against him by the agency. On balance, we do not believe so. Receiving a negative response to an inquiry about possible eligibility for membership in the system does not equate to the actual loss of physical property, as was the case in *Waugh*. At the time of the December 26 letter, Vail had not yet requested membership in the system, and

the agency had therefore not been required to rule on the issue of Vail's membership.

Vail did not request admission to the system until December 1988, at which time the ERS repeatedly failed to respond to Vail's communications. The agency did not answer any of Vail's letters until May 16, 1989, when it again cited Rule § 6–21–14, but this time also enclosed rules concerning administrative petitions of its rulings. Vail then petitioned for membership in the system, according to the agency's rules, and it was this petition which finally resulted in a formal agency ruling on the issue of Vail's right to full–time membership in the system, the ERS's November 8, 1990 declaratory order.

Based on the aforementioned sequence of events, the earliest that the ERS can be said to have responded to an actual request by Vail to join the system was May 16, 1989, although even this May 16 letter appears to be more an invitation to Vail to make use of applicable agency administrative procedures than an outright denial of his right to membership in the system. On the other hand, it is certainly arguable that Vail's claim did not accrue until the ERS issued its declaratory order formally denying Vail full–time membership in the system. Even if the May 16, 1989 letter is used to fix the applicable accrual date under HRS § 661–5, Vail's December 6, 1990 lawsuit was well within the two–year limitations period provided in the statute.

Moreover, the sequence of events in this case demonstrates that at least beginning in December 1988, Vail was persistently seeking a definitive agency ruling on his right to full–time membership in the system, despite the often dilatory responses of the ERS. Vail consistently adhered to agency procedures in petitioning for full–time membership. Given the sequence of events, it would be

wrong to allow the ERS to dispose of Vail's claim by pleading the statute of limitations provided in HRS § 661–5 on the basis of its letter to Vail in 1984.  Accordingly, we hold that Vail's lawsuit seeking judicial review of the ERS's November 8, 1990 declaratory order was not time–barred by HRS § 661–5.

## B.  Vail's Claim To Full–Time Retirement Credit
### 1.  Standard of Review

Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. *Sussel v. Civil Service Comm'n of the City and County of Honolulu*, 74 Haw. 599, 608, 851 P.2d 311, 316 (1993); *Chock v. Bitterman*, 5 Haw. App. 59, 63–64, 678 P.2d 576, 580, *cert. denied*, 67 Haw. 685, 744 P.2d 781 (1984).  The standard of review is one in which the reviewing court

> must determine whether the [circuit] court was right or wrong in its decision, applying the standards set forth in HRS § 91–14(g) to the agency's decision.  [Appellate] review is further qualified by the principle that the Board's decision carries a presumption of validity and [Vail] has the heavy burden of making a convincing showing that the decision is invalid because it is unjust and unreasonable in its consequences.

*Sussel*, 74 Haw. at 608–09, 851 P.2d at 316–17 (quoting *Chock*, 5 Haw. App. at 64, 678 P.2d at 580 (footnote omitted) (citations omitted)); *see also Dole Hawai'i Division — Castle & Cooke, Inc. v. Ramil*, 71 Haw. 419, 794 P.2d 1115 (1990).

HRS § 91–14(g) provides:

(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Under HRS § 91–14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of its discretion under subsection (6). *Sussel*, 74 Haw. at 609, 851 P.2d at 317 (citing *Outdoor Circle v. Harold K.L. Castle Trust Estate*, 4 Haw. App. 633, 638–39, 675 P.2d 784, 789 (1983), *cert. denied*, 67 Haw. 1, 677 P.2d 965 (1984)).

The circuit court in the present case, however, in review of the ERS declaratory order, applied subsection (5) instead of subsection (1) when it concluded that three of the ERS's conclusions of law regarding the

interpretation of HRS § 88–43 were "clearly erroneous and violat[ive] of H.R.S. § 88–42" and that the declaratory order as a whole was "clearly erroneous and violates the Hawai'i Revised Statutes." The precise issue presented to the circuit court concerned a question of statutory interpretation and, therefore, should have been reviewed under HRS § 91–14(g)(1), applying the right/wrong standard and not the clearly erroneous standard of review. *Amfac*, 74 Haw. at 119, 839 P.2d at 28. Accordingly, this court must apply HRS § 91–14(g)(1) under a right/wrong standard in our review of the circuit court's review of the ERS declaratory order.

Moreover, this appeal essentially concerns the interpretation of certain broad terms in two specific statutory provisions, and "[j]udicial deference to agency expertise has also been a guiding precept where the interpretation and application of broad or ambiguous statutory language by an administrative tribunal are the subject of review." *Aio v. Hamada*, 66 Haw. 401, 406, 664 P.2d 727, 731 (1983). We have

> recognized the wisdom of "a well established rule of statutory construction that, where an administrative agency is charged with the responsibility of carrying out the mandate of a statute which contains words of broad and indefinite meaning, courts accord persuasive weight to administrative construction and follow the same, unless the construction is palpably erroneous."

*Id.* at 407, 664 P.2d at 731 (citations omitted).

### 2. **Vail's Claim Violates HRS Chapter 88**

Vail argues that the plain language of HRS § 88–42 expressly mandates that per diem workers "shall become

members of the system," and therefore such workers cannot also be considered part–time employees to whom the ERS can deny membership under HRS § 88–43. Accordingly, Vail maintains that a per diem worker automatically qualifies for full–time membership service credit toward retirement.

Both the ERS and Vail agree that a per diem judge is one of the class of per diem workers under HRS § 88–42. According to HRS § 88–21, the definitions section of chapter 88, a per diem worker is "a person employed and compensated on an hourly or daily basis." HRS § 604–2, the statutory section which provides for the appointment of per diem district court judges, states in relevant part that such judges "shall receive per diem compensation for the days on which actual service is rendered[.]" Per diem judges are thus clearly "compensated on [a] . . . daily basis." Whether a per diem judge is also "employed" on a daily basis under chapter 88 is a question which requires a more complex analysis.

"Service" under the chapter is defined as "service as an employee paid by the State or county." HRS § 88–21. Also qualifying as "service" under the chapter is "service during the period of a leave of absence . . . if the individual is paid by the State or county during the period of the leave of absence[.]" HRS § 88–21 in relevant part defines an "employee" as "[a]n individual . . . during the period of a leave of absence if the individual is in service, as defined in this part, during the period of the leave of absence[.]" Thus, an individual who is not being paid during the period of a leave of absence is not an employee under the chapter during the period of that unpaid leave of absence. It therefore follows that an individual is an employee under the chapter while he or she is being paid by the State or county. Accordingly, a per diem worker,

including a per diem judge, is only an employee, and therefore "employed," on the days for which he or she receives compensation. The parties are thus correct that a per diem judge while performing his or her duties is a per diem worker under chapter 88.

The circuit court agreed with Vail that he should get full–time service retirement credit for the entire period of his per diem judgeship despite the number of actual work days during that period. However, it is Vail's claim, rather than the ERS's interpretation, which would violate certain express statutory provisions of chapter 88.

An ERS employee–member's retirement allowance under the system is based on a percentage of average final compensation multiplied by the total number of years of that member's "credited service." HRS § 88–74. The calculation of a member's credited service is thus crucial to a correct determination of that member's retirement allowance. A member's credited service at retirement consists in relevant part of "the member's membership service." HRS § 88–71. According to HRS § 88–21, a member's "membership service" is in relevant part "all service rendered by a member." "Service," as previously noted, is defined in relevant part as "service as an employee *paid by the State or county*." HRS § 88–21 (emphasis added).

Based on the foregoing analysis, only the days for which Vail was actually "paid by the State" can qualify as "service" under chapter 88. Likewise, Vail's "membership service" can only comprise those days for which he was actually compensated. Consequently, Vail's "credited service," upon which his retirement allowance must be based, can only include those days for which he was actually paid. To give Vail the full–time credit he claims for the entire period of his per diem appointment would violate the express method of calculating retirement

allowances provided in HRS § 88–74 and would result in a substantial windfall to Vail in direct contravention of the mandates of chapter 88.

In its reply brief, the ERS sets forth an instructive hypothetical that reveals the potential unjust and unreasonable result of Vail's interpretation of HRS §§ 88–42 and 88–43:

> Assuming a per diem employee worked over a period of 10 years, earning 5 years of [credited service] (based on actual service rendered), with an average final compensation of $10,000, and 3.5% as the applicable percentage, then a retirement allowance of $1,750 (5 x .035 x $10,000) would be earned and 1200 days of [actual] service [would have been] rendered (10 years x 12 months x 10 days per month) [to the employer].

> But under [Vail's] theory, 10 years of [credited service] would be awarded even if only one day of [actual compensated] service per month was rendered, [for] a total of [only] 120 days [of actual service to the employer over the entire 10 year period]. The retirement allowance would then be $3,500 (10 x .035 x $10,000)[, a] 100% increase in retirement benefits . . . while the employer received merely *one–tenth* [the amount] of [actual] service from the prior example, and [conceivably] not even one day of service for [any of] the month[s] of service credit claimed.

(Emphasis in original.)

Vail has failed to fulfill his burden of showing that the ERS's declaratory order was invalid. We hold that his claim is at odds with the specific mandates of chapter 88, and to sustain it would lead to an unjust and unreasonable

result. For this reason alone, we must vacate the decision of the circuit court.

### 3. Per Diem Workers Can Be Considered Part–Time Employees

Additionally, the ERS persuasively argues that per diem workers, including per diem judges, can be included within the category of part–time employees to whom the agency may deny membership in the system under HRS § 88–43. The two statutory sections at issue, currently designated HRS §§ 88–42 and 88–43, were both part of the original version of HRS chapter 88, enacted in 1925, *see* Act 55, §§ 3(1) and 3(3), 1925 Haw. Sess. Laws, although per diem workers were not specifically mentioned in § 3(1) of Act 55. Both sections have been amended since 1925. We have reviewed the available legislative history for all subsequent amendments to both sections and have found nothing that speaks directly to whether per diem workers can be considered part–time employees.

However, as the ERS points out, although per diem workers were not specifically recognized as eligible employees and granted membership in the system until 1951, *see* Act 110, § 1(b), 1951 Haw. Sess. Laws, the ERS has possessed the specific authority to deny membership to any class of part–time employees since the original 1925 version of the retirement law. The ERS notes that the Hawai'i State legislature in 1951 decided to grant membership status to per diem workers specifically to "provide[] a retirement allowance *computed in the same manner for all government employees* and remove[] the exclusion of a group not at present permitted to become members because of the method of payment (daily or hourly basis)." Sen. Stand. Comm. Rep. No. 357, in 1951

Senate Journal, at 842 (emphasis added). The ERS there-
fore concludes that the legislature intended merely to
permit per diem workers to enter the system *on the same
basis* as all other government employees. The ERS argues
that per diem workers should consequently be subject to
the same qualifications and restrictions as all other
government employees, specifically including those per-
taining to part–time employees under HRS § 88–43.

The ERS further notes that in Act 110, the legislature
amended the § 88–21 definition of "employee" to specifi-
cally include "workers employed and compensated on
an hourly or daily basis," *i.e.*, per diem workers. Act 110,
§ 1(a), 1951 Haw. Sess. Laws. Because the ERS possessed
the general authority to exclude from membership any
class of part–time employees from the inception of the
retirement law, the agency concludes that the legisla-
ture, obviously aware of the ERS's general exclusionary
authority, must have intended that per diem workers also
be subject to that authority, in common with every other
class of "employee."

The ERS thus admits that per diem workers are
expressly admitted to membership in the system under
HRS § 88–42, along with "all [other State or county]
employees." However, the agency contends that HRS
§ 88–43 gives it the specific authority to then exclude from
membership "any class of part–time employees" who
would otherwise be members of the system under HRS
§ 88–42. In other words, according to the agency's view,
HRS § 88–42 is the general admission section from which
HRS § 88–43 gives it the power to carve out specific excep-
tions under the part–time employee provision.

An analysis of the specific statutory language at issue
supports the ERS's argument. The term "part–time
employee" is left undefined by the statute. However,

the term "employee," as defined in HRS § 88–21, specifically includes "per diem employees." Moreover, simple logic dictates that part–time employees must likewise be included within the more general class of all employees, and HRS § 88–42 specifically provides that "all employees . . . shall be members of the system[.]" Thus, the plain language of HRS § 88–42 dictates that *all* employees — full–time, part–time, and per diem — "shall be members of the system." However, HRS § 88–43 just as plainly gives the ERS the power to "deny membership to any class of part–time employees" and therefore must logically be considered a specific qualification of HRS § 88–42's blanket admission of all employees.

The issue presented is whether the ERS can include per diem employees within the class of part–time employees over which HRS § 88–43 gives the agency authority. We note that in its administrative rule implementing HRS § 88–43, the ERS does not differentiate between per diem and part–time employees. The agency simply assumes that part–time employees are those individuals who work less than full–time, and further assumes that any per diem worker who falls into this category must also be a part–time employee under the statute.

Vail's sole argument against the ERS position is that, because HRS § 88–42 specifically mentions both "all employees" and "per diem workers," per diem employees must represent a special class not subject to the restrictive power of the ERS under HRS § 88–43. But as previously discussed, this interpretation runs afoul of the specific § 88–21 definition of "employee" as including per diem workers. Otherwise, the most that can be said for Vail's argument is that the applicable parts of HRS §§ 88–21, 88–42, and 88–43 give rise to some ambiguity, and that, by failing to define the broad term "part–time employees,"

the statute leaves the ERS's authority to include per diem workers within the class of part–time employees less than crystal clear.

However, as we have noted, in the case of broad or ambiguous statutory language, the applicable standard of review regarding an agency's interpretation of its own governing statute requires this court to defer to the agency's expertise and to follow the agency's construction of the statute unless that construction is palpably erroneous. *Aio v. Hamada*, 66 Haw. 401, 407, 664 P.2d 727, 731 (1983). Vail has failed to demonstrate that the ERS's construction of HRS §§ 88–42 and 88–43, and its implementation of HRS § 88–43 through administrative rule § 6–21–14, are palpably erroneous. On the other hand, the ERS has persuasively argued that per diem employees are included in the class of part–time employees to whom the agency may deny membership in the system under HRS § 88–43 and its implementing administrative rule § 6–21–14. Therefore, because at least portions of Vail's time as a per diem judge fell within categories specified in Rule § 6–21–14, we hold that the agency correctly determined that Vail did not qualify for full–time credited service under the retirement law.[6]

---

[6] Vail also attempts to demonstrate that per diem judges are no different from legislators who do have the option to join the system and receive full–time service credit for what Vail contends is essentially part–time employment. Vail's attempted analogy lacks merit. The pay for legislators is prorated; they are not paid on a per diem basis. Additionally, HRS § 88–43 specifically provides that elective officers, including members of the legislature, "shall be eligible for membership . . . at their option." The ERS thus has no authority to deny membership to legislators who opt to join the system. There is no such comparable provision for per diem employees.

### III. CONCLUSION

Based on the foregoing, we vacate the circuit court's decision reversing the ERS's declaratory order of November 8, 1990 and its order requiring the agency to grant Vail full–time membership for the entire period of his per diem judgeship, and we reinstate the ERS's November 8 declaratory order denying Vail full–time membership in the system pursuant to HRS § 88–43 and ERS administrative rule § 6–21–14.

On the briefs:

*Celia L. Jacoby* and *Charleen M. Aina*, Deputy Attorneys General, for defendant–appellant Employees' Retirement System of the State of Hawai'i.

*Shackley F. Raffetto* for plaintiff–appellee John T. Vail.