DISSENTING OPINION BY
NAKAYAMA, J.
The Majority holds that Stout is eligible for service-connected disability retirement benefits for injuries sustained while working as a summer school teacher, even though Stout was not contributing into the retirement system for her work in that position. Because I believe that an employee may only receive service-connected disability retirement benefits when the employee is injured *192 while working at a job for which she is making contributions, I respectfully dissent.
I. BACKGROUND
On June 30, 1988, Stout was shot by a student while working as a summer school teacher at ‘Aiea High School.[1] At the time of the shooting, Stout was a member of the Employees’ Retirement System (ERS) through her work as a full-time secondary school teacher at Radford High School during the regular school year.[2] Stout contributed to the ERS fund over the course of twelve months through deductions taken from her full-time salary. Neither Stout nor the Department of Education (DOE) contributed to the ERS fund for Stout’s work as a summer school teacher.
On August 3, 2004, Stout filed an application for disability retirement with the ERS Board. The Medical Board to the ERS reviewed Stout’s application and record and issued a report recommending that Stout be granted service-connected occupational disability retirement. The Medical Board found that Stout was “incapacitated for the further performance of duty and that such incapacity is likely to be permanent” and that Stout’s incapacity was “the result of an accident occurring while the Member was in the actual performance of duty at some definite time and place.”
The ERS Board remanded the report to the Medical Board, explaining that “the Board is inclined to deny the application because section 88-42.5, Hawaii Revised Statutes, and section 6-21-14(2), Hawaii Administrative Rules, exclude teaching summer school from a public school teacher’s Employees’ Retirement System membership” and that “[a]n accident resulting in injury to a public school teacher while the teacher is teaching summer school is therefore not ‘an accident occurring while in the actual performance of duty’ ” under the applicable statutes.
On May 19, 2006, the Medical Board issued a memorandum declining to revise its recommendation, explaining that it “has no expertise on the requirements concerning membership” and that interpretation of statutes and rules is “best left to the Trustees.” Subsequently, on July 15, 2007, the Medical Board issued another memorandum, noting that “[t]he only possibility of granting the Member benefits is if she is considered a member for the purposes of qualifying for retirement benefits but not for the purpose of service credit while teaching summer school.” The Medical Board then concluded that “this is a matter for the [ERS] Board to decide.”
On October 11, 2007, the ERS Board issued its decision to deny Stout’s application:
[T]he Board of Trustees rejects the Medical Board’s finding that your disability is the “result of an accident occurring while in the actual performance of duty.” The event that resulted in your disability took place while you were teaching summer school. An accident incurred by a public school teacher while teaching “summer” school is not “an accident occurring while in the actual performance of [the teacher’s] duty” as a public school teacher, because HRS § 88-42.5 and Hawaii Administrative Rules § 6-21-14(2) exclude teaching summer school from the teacher’s membership in the Employees’ Retirement System.
Stout appealed this decision and the Hearing Officer, former Associate Justice Mario R. Ramil (Hearing Officer Ramil), issued his recommended decision on March 6, 2013. Hearing Officer Ramil recommended that the ERS Board deny Stout’s application, noting that “[i]t goes without saying that [the requirement that the accident occurred while in the actual performance of duty] refers to employment that made contributions to the ERS in order to establish ERS coverage.” He also determined that “it would be unfair to all other members of the ERS to have retirement benefits taken by Applicant out of ERS funds when neither the DOE nor Applicant made the requisite contributions for *193 such retirement benefits from her part-time temporary summer school earnings.” On July 15, 2013, the ERS Board issued its proposed decision, which adopted Hearing Officer Ramil’s recommended decision.
Stout filed exceptions to the proposed decision and the ERS Board held a hearing on September 23,2014. On October 27, 2014, the ERS Board issued its final decision, which affirmed the Board’s proposed decision to deny Stout’s application. Of note, the ERS Board stated that its “uniform practical construction of the statutes and rules involved in this appeal has been that ERS members are not entitled to service-connected disability retirement based on accidents that occur when they are performing duties in non-membership employment positions.” On appeal, the Circuit Court of the First Circuit (circuit court) affirmed the ERS Board’s decision.[3]
II. DISCUSSION
The Majority concludes that Stout is eligible for service-connected disability retirement benefits pursuant to Hawai'i Revised Statutes (HRS) § 88-79 (Supp. 2004), explaining that the statute “provides for a retirement benefit to members who become disabled due to the occurrence of an accident while in the service of the State or any county, regardless if that service is ‘membership service.’ ” I disagree with this conclusion for two reasons.
First, the statutory framework of HRS Chapter 88 explicitly prohibits a temporary employee from becoming a member of the ERS, and explicitly limits ERS membership to one full-time position per employee. The Majority disregards these statutory provisions in reaching its conclusion to award Stout the requested benefits, as these provisions clearly prohibit Stout from ERS membership as a summer school teacher. Second, the purpose and structure of the Employees’ Retirement System make it clear that a member must be contributing into the system in which the member is employed in order to receive disability retirement benefits. Because Stout was not contributing into the system as a summer school teacher when she was injured in this capacity, she cannot receive benefits.
A. The statutory framework of Chapter 88 prevented Stout from attaining ERS membership as a summer school teacher.
The Majority relies on the language of HRS § 88-79 in reaching its conclusion that Stout is entitled to service-connected disability retirement benefits for injuries sustained during her summer school job. While the language of HRS § 88-79 might suggest such a conclusion, when read in the larger context of Chapter 88, it becomes clear that the Majority’s holding in this case is at odds with the larger statutory scheme.
“Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another.” State v. Young, 107 Hawai'i 36, 40, 109 P.3d 677, 681 (2005) (quoting State v. Kaua, 102 Hawai'i 1, 8, 72 P.3d 473, 480 (2003)); see also State v. Sullivan, 97 Hawai'i 259, 262, 36 P.3d 803, 806 (2001) (“And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.”).
HRS § 88-79, “Service-connected disability retirement,” provides:
(a) Upon application of a member, or the person appointed by the family court as guardian of an incapacitated member, any member who has been permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place, or as the cumulative result of some occupational hazard, through no wilful negligence on the member’s part, may be retired by the board of trustees for service-connected disability.
The Majority interprets the language of HRS § 88-79 to mean that a member can qualify for service-connected disability retirement as long as the member is injured while “in the actual performance of duty to the State or county.” However, such an interpretation is *194 in conflict with Chapter 88’s language regarding ERS membership.
HRS § 88-42 (1993), “Membership generally,” provides qualifications for membership into the ERS:
Except as otherwise provided in this part, all employees of the Territory or any county on July 1,1945, shall be members of the system on such date, and all persons who thereafter enter or reenter the service of the State or any county shall become members at the time of their entry or reentry.
While HRS § 88-42 provides in sweeping terms that “all persons” serving the State or county “shall become members,” two following statutes provide limitations on membership. HRS § 88-42.5 (Supp. 2004), “Membership of employees holding more than one position, appointment, or office,” provides that membership is limited to one full-time position:
(a) The membership of any employee holding more than one full-time position, appointment, office, or any combination thereof shall be limited to the position, appointment, or office of the employee’s option; provided that the employment in the position, appointment, or office shall meet the minimum membership eligibility requirements as provided in this part. Any contributions made based on the compensation, pay, or salary of the employee’s position, appointment, or office other than that on which the employee’s membership is based shall be returned to the employee.
Additionally, HRS § 88-43 (Supp. 2004), “Persons ineligible for membership; optional membership,” exempts part-time or temporary employees from membership: “[T]he board of trustees may deny membership to any class of part-time employees or persons engaged in temporary employment of three months or less.”[4] See also Vail v. Emps.’ Ret. Sys., 75 Haw. 42, 65, 856 P.2d 1227, 1239 (1993) (“HRS § 88-43 ... plainly gives the ERS the power to ‘deny membership to any class of part-time employees’ and therefore must logically be considered a specific qualification of HRS § 88-42’s blanket admission of all employees.”).
Under both HRS §§ 88-42.5 and 88-43, Stout was ineligible for ERS membership as a summer school teacher. First, under HRS § 88-42.5, Stout was ineligible for ERS membership as a summer school teacher because she already qualified for membership with her full-time position as a secondary school teacher at Radford High School. Second, under HRS § 88-43, Stout was ineligible for membership as a summer school teacher because it was temporary employment.[5] Thus, under both HRS §§ 88-42.5 and 88-43, Stout was ineligible for ERS membership for her position as a summer school teacher at ‘Aiea High School.
It logically follows that Stout qualified as a member only for her full-time teaching position at Radford High School and that Stout could receive service-connected disability retirement benefits only for an injury sustained while in the actual performance of duty for this full-time position.[6] As such, I would hold that the ERS Board’s conclusion that Stout was ineligible for the requested benefits was consistent with the statutory scheme of Chapter 88 and was not palpably erroneous. See Morgan v. Planning Dep’t, 104 Hawai'i *195 173, 180, 86 P.3d 982, 989 (2004) (“[W]here an administrative agency is charged with the responsibility of carrying out the mandate of a statute which contains words of broad and indefinite meaning, courts accord persuasive weight to administrative construction and follow the same, unless the construction is palpably erroneous.” (quoting Ka Pa‘akai O Ka‘Aina v. Land Use Comm’n, 94 Hawai'i 31, 41, 7 P.3d 1068, 1078 (2000))); Vail, 75 Haw. at 66, 856 P.2d at 1240 (“[I]n the case of broad or ambiguous statutory language, the applicable standard of review regarding an agency’s interpretation of its own governing statute requires this court to defer to the agency’s expertise and to follow the agency’s construction of the statute unless that construction is palpably erroneous.”).
B. Stout is not entitled to disability retirement benefits because she did not contribute into the ERS fund as a summer school teacher.
Second, even if Stout were eligible for ERS membership as a summer school teacher, the Majority’s conclusion to award Stout the requested benefits is contrary to the purpose and structure of the ERS. The ERS was established in 1926 to “provide retirement allowances and other benefits to Hawaii State and County government employees.” Emps.’ Ret. Sys., Questions & Answers About Your Employees’ Retirement System Contributory Plan 1 (2012) [hereinafter Questions & Answers]; see also Kaho'ohanohano v. State, 114 Hawai'i 302, 311, 162 P.3d 696, 706 (2007) (“The ERS provides retirement benefits to State and county employees, who become members upon their entry or reentry into service of the State or any county.”). This is accomplished through monthly contributions made by ERS members (the employees) and the State and county employers, which are credited to the member’s ERS account and accrue interest. Questions & Answers, supra, at 2; see also Kaho'ohanohano, 114 Hawai'i at 311, 162 P.3d at 705 (“The system is funded by contributions from State and county employers, as well as State and county employees.”). Retirement payments, including disability retirement payments, are tied to these contributions. Questions & Answers, supra, at 2-4.
At a basic level, this means that a member must be contributing into the retirement system in order to receive retirement benefits. The issue in this case is a more nuanced version of this straightforward principle, In this case, Stout made contributions to the ERS, but only in her capacity as a full-time teacher at Radford High School. Each month, an ERS deduction was taken from her salary as a full-time teacher. If Stout had sustained the injury while working in her capacity as a full-time teacher at Radford High School, it is without question that Stout would be eligible to receive disability retirement benefits pursuant to HRS § 88-79.
However, Stout was injured while working as a summer school teacher at ‘Aiea High School. Stout did not make any contributions to the ERS while in this position. Thus, Stout could not receive disability retirement benefits for being injured while on the job as a summer school teacher because she did not contribute to the ERS while she was employed in this position.
The fact that Stout was employed by the State for the summer session while contributing to the ERS for another State job at the time of her injury is merely coincidental and should not be a factor when considering whether Stout is eligible for benefits. If Stout had been injured while teaching summer school at a private school, instead of a public school, she would not be entitled to ERS benefits. Similarly, if Stout were a private school teacher during the regular school year but was injured while teaching at a public school during the summer session, Stout would not be entitled to ERS benefits, Under these hypotheticals, it is clear that Stout would not be eligible for ERS benefits because Stout would not have contributed part of her pay to the ERS.[7] Likewise, under the facts of this case, Stout is not eligible for *196 ERS benefits because she did not contribute part of her summer school pay to the ERS; the fact that she did contribute part of her salary as a full-time teacher to the ERS is irrelevant.
A simple rule emerges from this analysis: only when an employee contributes to the ERS is the employee entitled to ERS benefits.[8] In this case, Stout did not contribute to the ERS from her summer school employment; she should not now be entitled to benefits for which she has not paid.
While the Majority asserts that the legislative history of the ERS shows that “the legislature has expanded the service-connected disability benefit over time, instead of restricting it,” there is no indication that the legislature intended the specific and unprecedented interpretation that the Majority has read into the ERS statutes in this case. Notably, as support for this assertion, the Majority cites to a 1925 report on the bill to establish a retirement system for employees of the Territory of Hawaii. The 1925 report provides an example for the application of the accidental disability benefit:
For an example of the application of this benefit we may consider the case of an employee who, in an explosion occurring while at work for the government, loses his eyesight. In such a case, the government would provide him with a pension of two-thirds of his average final compensation which would be payable as long as he lives. If, for example, his average annual compensation is $1,800. his pension under the retirement plan would be $1,200. a year. In addition all contributions made by the employee would be returned to him as an additional annuity.
Joint Comm, on Pensions of the Senate and House of Representatives, Report on the Bill to Establish a Retirement System for Territorial Employees of the Territory of Hawaii 27 (1925). The Majority reads into this example the following rule: “[I]n cases where but for an employee’s service to the government the employee would not have become disabled and unable to continue to work, that employee should receive some kind of retirement benefit regardless of the employee’s duration of service and amounts contributed to the retirement system.” However, there are no indicia from the 1925 report that the legislature considered such a nuanced articulation of the law when it provided this simple example; instead, the example merely illustrates the type of injury an award of accidental disability benefits was intended for, and how to calculate those benefits. The example from the 1926 report certainly does not indicate that the legislature contemplated the issue presented in the present case.
Indeed, there is no indication that the legislature contemplated allowing a large class of people—all those who work at public summer schools across the State, including teachers, administrators, and various support staff—to receive benefits without paying into the retirement system. The Majority’s holding today creates a tremendous financial burden and unfunded liability for the ERS because the ERS is now responsible for paying benefits to an unknown number of employees who become injured on the job but who have not contributed into the system.
III. CONCLUSION
Stout presents a sympathetic narrative and a compelling case to grant her relief. However sympathetic her situation may be, the court should not award remuneration to a party out of pity when not allowed by the statutory framework. The statutory interpretation of the Majority will have far-reaching effects and consequences, clearly unintended by the legislature.
For these reasons, I would affirm the ERS Board’s denial of Stout’s application for disability retirement benefits.

. The summer session began in June 1988 and ended in July 1988. In contrast to full-time teachers, summer school teachers "are paid from a special fund created by parents paying fees for students to attend summer school sessions.”

. Public school teachers who work during the regular school year are ten-month employees because they do not work during the summer vacation; however, their salary is paid out over twelve months.

. The Honorable Rhonda A. Nishimura presided.

. Additionally, Hawai'i Administrative Rules (HAR) § 6-21-14 (effective 1981) also provides that short-term or temporary employees are excluded from membership in the ERS: "The following classes of employees shall be excluded from membership in the system: ... (2) Persons employed on short-term or temporary appointments of three months or less.”

. The summer session lasted from June through July, 1988. Since temporary employment is defined as employment for “three months or less,” a summer teaching job spanning two months would clearly fall under this category.

. The Majority suggests that, even under my interpretation of Chapter 88, Stout remains eligible for benefits because the definition of service “includes service during a paid leave of absence as well as service during an unpaid leave of absence.” The Majority’s suggestion here appears to be premised on an assertion that Stout was either on a paid or unpaid leave of absence from her full-time teaching job at the time of the shooting. However, there is no evidentiary support in the record for the assertion that a teacher is on a leave of absence just because school is out for summer break, or that Stout specifically was on a leave of absence when she was injured. As such, I disagree with the Majority's suggestion that Stout was injured while she was on a leave of absence from her full-time teaching position, and thus could qualify for service-connected disability retirement benefits.

. Of course, as articulated in the prior section, HRS §§ 88-79(a) and 88-43 would also prevent Stout from receiving benefits under these hypo-theticals because she would be ineligible for ERS membership. However, assuming arguendo that Stout would be eligible for ERS membership for these positions, these hypotheticals serve the purpose of breaking down a complicated fact pattern in order to illuminate a simple premise: ERS benefits are directly tied to ERS contributions.

. The Majority asserts that, under this rule, "ERS members with two full-time State or county jobs, required to choose one full-time position pursuant to HRS § 88-42.5, would not be entitled to service-connected disability retirement for accidental injuries suffered during the non-membership position.” I agree with this assertion and believe that, however harsh it appears on paper and in practice, this is the rule that is provided for under the law.