*** FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER ***

**Electronically Filed
Supreme Court
SCWC-18-0000119
30-MAY-2025
08:07 AM
Dkt. 20 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

DELBERT P. COSTA, JR.,
Petitioner/Claimant-Appellee-Appellant,

vs.

COUNTY OF HAWAIʻI, DEPARTMENT OF WATER SUPPLY,
Respondent/Employer-Appellant-Appellee,

and

COUNTY OF HAWAIʻI, HEALTH AND SAFETY DIVISION,
Respondent/Adjuster-Appellant-Appellee.

SCWC-18-0000119

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CAAP-18-0000119; CASE NO. AB 2014-143(WH);
DCD NO. 9-12-00934(H))

May 30, 2025

RECKTENWALD, C.J., McKENNA, EDDINS, GINOZA, AND DEVENS, JJ.

OPINION OF THE COURT BY RECKTENWALD, C.J.

## I.   INTRODUCTION

This case involves the failure of employer, County of

Hawaiʻi, Department of Water Supply, and its adjuster,

(collectively the County) to make timely payments of temporary total disability (TTD) benefits to employee, Delbert P. Costa, Jr., after he suffered a workplace injury.

It is uncontested that TTD benefits were due Costa for the relevant periods. The question before this court is whether Costa is entitled to receive penalty payments arising from the County's failure to timely pay TTD benefits as required under Hawai'i Revised Statutes (HRS) § 386-92 (Supp. 1996). The County offers two rationales for why such a penalty is inappropriate. First, the County argues that no penalty can be levied because "TTD benefits were not ordered by the Director until [the] April 25, 2014 [supplemental decision.]" Second, the County argues that because it "disputed liability for the work injury in its initial report," it was protected from incurring any future penalty for late payments. We reject both of these arguments.

Based on the plain reading of HRS § 386-92, the statutory scheme of Hawai'i workers' compensation laws, and its legislative history, we hold that a penalty may be properly imposed where an employer or its carrier fails to make timely TTD benefit payments where liability is not denied and there is no question that compensation is due the injured worker.

## II.  BACKGROUND

On May 9, 2012, Delbert Costa suffered a stress injury while employed by the County. Costa reported the injury to the

2

County on May 9, 2012, and the County filed an industrial injury claim on September 19, 2012.  The County completed a WC-1 "Employer's Report of Industrial Injury" contesting compensability pending investigation and a medical examination, which found the injury was not work-related.  The County did not contest that TTD benefits would be due Costa if the injury was determined to be compensable.  In a letter dated October 31, 2012, the County informed Costa that, "[i]f the claim is found to be compensable, payment of benefits will be made pursuant to Chapter 386 and the Hawaii Workers' Compensation Medical Fee Schedule."

On December 7, 2012, Costa filed a WC-5 "Employee's Claim for Workers' Compensation Benefits" asserting he suffered from "stress causing physical & mental ailments" following "multiple incidents over past 5-6 [years] regarding job position assignments[,] being overlooked, causing extreme distress continuing to progress to heath illness."  A disability compensation hearing was convened on April 23, 2013, to determine inter alia whether the claim was compensable.[1]

On June 24, 2013, the Director of the Department of Labor and Industrial Relations, Disability Compensation Division

---

[1]    At this hearing, the County only contested the cause of Costa's injury and not the fact that he had sustained an injury and was disabled.  The County argued that Costa's injury was due to a personnel matter rather than from the performance of his job duties.

(Director) rendered a decision (the Director's decision) finding that the County had "failed to provide substantial evidence to overcome the presumption [of compensability,]" and concluding that Costa "suffered a personal injury (stress) on 5/9/2012 arising out of and in the course of employment." The Director's decision also determined Costa's average weekly wages. Pursuant to HRS §§ 386-21 (Supp. 2009) and 386-26 (Supp. 2006), the Director ordered the County to pay "such medical care, service and supplies as the nature of the injury may require." The Director's decision further noted "[t]he matters of average weekly wages, temporary disability, permanent disability and/or disfigurement, if any, shall be determined at a later date." The County did not appeal the decision and did not pay TTD benefits to Costa.

On August 12, 2013, Costa applied for a second hearing before the Disability Compensation Division to determine the issue of nonpayment of TTD benefits. Costa argued that because the County did not appeal the Director's decision, TTD benefits were due and payable, and a penalty for late payment of these benefits was appropriate pursuant to HRS § 386-92.

At the County's request, the Director ordered Costa to appear for an independent psychological evaluation by a provider of the County's choosing as provided in HRS § 386-79 (Supp.

4

1996). The independent psychological evaluation administered by Dr. Rogers took place on December 17, 2013.

The disability compensation hearing requested by Costa on the issue of nonpayment of TTD benefits was held on February 25, 2014. At the hearing, the County relied on the results of the independent psychological evaluation to contest the compensability of TTD benefits, arguing that the disability was due to Costa's preexisting traits and not his work duties.

After the hearing, the Director issued a supplemental decision on April 25, 2014, (the Director's supplemental decision) finding, inter alia, that the County's "objection . . . that the 6/24/2013 decision determined that [TTD] was to be determined at a later date is without merit since the 6/24/2013 decision was rendered finding the claim for stress compensable. Without appeal of said decision, employer obstructed benefits payable to the claimant." The Director's supplemental decision awarded Costa TTD benefits for various periods, starting from May 14, 2012, in the amount of $21,389.18.[2] The Director also imposed a 20% penalty on the County for late payment of TTD benefits under HRS § 386-92, totaling $4,277.84.

_____

[2] From May 14, 2012, through June 4, 2012, and from August 15, 2012, through January 7, 2013, Costa was awarded TTD benefits in the amount of $15,996.24. Additionally, from January 8, 2013, through December 17, 2013, Costa received TTD benefits under a prior shoulder injury. Thus, for these weeks of concurrent disability, the Director found the County was liable for the difference in the compensation rates, amounting to $5,392.94.

5

On May 7, 2014, the County appealed the Director's supplemental decision to the Labor and Industrial Relations Appeals Board (LIRAB) and filed a motion for partial stay of TTD benefits and the penalty. The LIRAB granted the County's motion in part, only staying the assessment of penalties.

On January 31, 2018, the LIRAB reversed the Director's supplemental decision. Applying the plain language of HRS §§ 386-31(b) (Supp. 2005) and 386-92 and the legislative purpose as discussed in Panoke v. Reef Development of Hawai'i, Inc., 136 Hawai'i 448, 363 P.3d 296 (2015), the LIRAB found that "TTD benefits were not due or payable under HRS § 386-31(b) prior to the Director's June 24, 2013 final decision on compensability. Accordingly, under HRS § 386-92, there is no statutory basis for a penalty against Employer for non-payment of TTD [benefits] prior to June 24, 2013."

As for the penalties assessed for the County's nonpayment of TTD benefits after the Director's decision, the LIRAB concluded that, because Costa had been disabled under a previous shoulder injury and the County paid TTD benefits for the period from January 8, 2013, to December 13, 2013, the penalty should not have been imposed by the Director for Costa's May 9, 2012 stress injury. For the periods from May 14, 2012, to June 4, 2012, and August 15, 2012, to January 7, 2013, the LIRAB found no statutory basis to assess the penalty under HRS

6

§ 386-92, finding that the County had a reasonable basis to challenge liability for payment of the TTD benefits based on Dr. Rogers' independent psychological evaluation. Notably, that evaluation occurred after the Director's decision had determined the compensability of Costa's stress injury.

The LIRAB Chair dissented, arguing that, after the Director's decision, the compensability of Costa's injury could no longer be denied and the County "was then required to comply with its statutory duty ('shall pay') under HRS Section 386-31(b), for the prompt payment for TTD benefits within ten (10) days of the Employer being notified of the disability, without waiting for decision [sic] from the Director." The Chair further reasoned that the County "did not have any medical basis to support its position that [Costa] was not entitled to TTD . . . until receipt of [the independent psychological evaluation] on January 14, 2014." Therefore, since the TTD benefits were "untimely and/or unpaid" for the period from May 14, 2012 through June 4, 2012 and from August 15, 2012 through December 17, 2013, the Chair "conclude[d] that [the County] is subject to payment of a 20% penalty in the amount of $4,277.84, pursuant to HRS Section 386-92, for [the relevant] periods[.]" (Emphasis omitted.)

Costa appealed the LIRAB's decision to the Intermediate Court of Appeals (ICA). The ICA affirmed, although it held (1) the LIRAB's decision and order erroneously applied the "clear and

convincing" evidentiary standard, instead of the required

"preponderance of the evidence" standard set out in HRS

§ 91-10(5) (2012), and (2) the LIRAB erred in "concluding that

HRS § 386-92 is punitive rather than remedial in nature."

However, according to the ICA, Costa's rights were not prejudiced

as a consequence of these errors. The ICA agreed with the

LIRAB's finding that the Director's decision ordered only

compensation for medical costs pursuant to HRS §§ 386-21 and 386-

26, but deferred a determination on average weekly wages and TTD

benefits to a later date. Thus, the ICA reasoned the record did

not support the imposition of a penalty.

Costa applied for a writ of certiorari, and we accepted

his application.

### III. STANDARDS OF REVIEW

**A.   The LIRAB's Decision**

Appellate review of agency decisions is governed by the

Hawai'i Administrative Procedure Act. HRS § 91-14(g) (2012),

"Judicial review of contested cases" provides:

> Upon review of the record the court may affirm the
> decision of the agency or remand the case with instructions
> for further proceedings; or it may reverse or modify the
> decision and order if the substantial rights of the
> petitioners may have been prejudiced because the
> administrative findings, conclusions, decisions, or orders
> are:
>
> (1)   In violation of constitutional or statutory provisions;
>       or
>
> (2)   In excess of the statutory authority or jurisdiction of
>       the agency; or

8

(3)     Made upon unlawful procedure; or

(4)     Affected by other error of law; or

(5)     Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6)     Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"Under HRS § 91-14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6)." United Pub. Workers, AFSCME, Local 646, AFL-CIO v. Hanneman, 106 Hawai'i 359, 363, 105 P.3d 236, 240 (2005) (brackets omitted) (quoting Paul's Elec. Serv., Inc. v. Befitel, 104 Hawai'i 412, 416, 91 P.3d 494, 498 (2004)).

## B.   The LIRAB's Statutory Interpretation

Appellate courts generally review questions of statutory interpretation de novo. Gillan v. Gov't Emps. Ins. Co., 119 Hawai'i 109, 114, 194 P.3d 1071, 1076 (2008). "[W]here the language of the law is plain and unambiguous, courts must give effect to the law according to its plain and obvious meaning." Mikelson v. United Servs. Auto. Ass'n, 108 Hawai'i 358, 360, 120 P.3d 257, 259 (2005) (internal quotations and citations omitted). However, where a statute's language is ambiguous, the appellate court must "defer to the agency's expertise and . . . follow the agency's construction of the statute unless that

9

construction is palpably erroneous." Panoke, 136 Hawai'i at 461, 363 P.3d at 309 (quoting Vail v. Emps.' Ret. Sys., 75 Haw. 42, 66, 856 P.2d 1227, 1240 (1993)).

## IV.   DISCUSSION

Costa raises two issues before this court:

1.   Whether the ICA gravely erred by not properly applying the legislative intent and purpose in use of WC-1 forms by employers and which interpretation failed to compensate [Costa] for delays in temporary disability benefits contrary to the remedial nature of the statute as recognized by this Court?

2.   Whether the ICA's conclusion [that Costa] was not entitled to penalties under [HRS] Section 386-92 . . . is inconsistent with this Court's decision in Panoke. . . .

Neither party contests that TTD benefits were owed for the relevant periods. The sole question then is whether, under HRS § 386-92, the ICA and the LIRAB erred in overturning the Director's imposition of a penalty for failure to timely pay TTD benefits.

Costa advances two arguments in favor of imposing a penalty. First, Costa argues that a penalty was appropriate because the statutory scheme requires payment of TTD benefits if a finding of compensability is not appealed, without need to wait for a separate decision on TTD. Second, Costa asserts that the ICA and the LIRAB misconstrued this Court's holding in Panoke to mean that "an employer in every situation will never be subject to a penalty under Section 386-92, HRS, if it initially controverted the claim."

10

The County counters that a penalty was not appropriate because "TTD benefits [for the relevant periods] were not ordered by the Director until April 25, 2014, and [the County] disputed liability for the work injury in its initial report[.]" The County argues that a plain reading of HRS § 386-92 supports its position.

We disagree.

## A. Disputing Liability at the Outset Does Not Create an Indefinite "Safe Harbor" Under HRS § 386-92

We begin with the County's contention that penalties may not be levied for failure to timely pay TTD benefits because the County "disputed liability for the work injury in its initial report[.]" In essence, the County asks this court to construe HRS § 386-31(b) to provide an indefinite safe harbor for employers to delay TTD benefit payments that are initially controverted. As discussed below, we reject this approach as it would lead to an absurd result that is in conflict with the plain language, legislative intent, and remedial nature of HRS §§ 386-31(b) and 386-92.

### 1. The liberal construction of Hawai'i workers' compensation laws supports the imposition of penalties

Hawai'i courts have consistently recognized the importance of a liberal construction to give effect to our workers' compensation laws. See, e.g., In re Palama, 34 Haw. 65, 67 (Haw. Terr. 1937) ("The great purpose of [workers'

11

compensation laws] . . . is to provide means for compensating the employee for pecuniary loss arising out of his disability to work, and to accomplish that purpose the statute should receive a liberal construction.").  As this court explained in Davenport v. City & County of Honolulu,

> It is well-established in Hawai'i that chapter 386 is social legislation that is to be interpreted broadly.  The legislature has chosen to treat work-related injuries as a cost of production to be borne by industry.  Accordingly, chapter 386 is construed liberally in favor of coverage providing compensation for an employee for all work connected injuries, regardless of questions of negligence and proximate cause.

100 Hawai'i 481, 491, 60 P.3d 882, 892 (2002) (internal citations and quotations omitted).

Hawai'i workers' compensation laws are "highly remedial in character.  Their paramount purpose is to provide compensation for an employee for all work-connected injuries, regardless of questions of negligence and proximate cause."  Flor v. Holguin, 94 Hawai'i 70, 79, 9 P.3d 382, 391 (2000) (quoting Evanson v. Univ. of Haw., 52 Haw. 595, 600, 483 P.2d 187, 191 (1971)).  As this court has explained, our workers' compensation laws "represent a socially enforced bargain: the employee giving up his right to recover common law damages from the employer in exchange for the certainty of a statutory award for all work-connected injuries."  Van Ness v. State Dep't of Educ., 131 Hawai'i 545, 558, 319 P.3d 464, 477 (2014) (quoting Evanson, 52 Haw. at 598, 483 P.2d at 190).  "[T]he slightest aggravation or

acceleration of an injury by the employment activity mandates compensation." Korsak v. Hawai'i Permanente Med. Grp., 94 Hawai'i 297, 305, 12 P.3d 1238, 1246 (2000) (quoting DeFries v. Ass'n of Owners, 999 Wilder, 57 Haw. 296, 308, 555 P.2d 855, 862 (1976).

To give effect to this broad purpose, "[t]he workers' compensation statute[3] rests on the presumption that a claimed injury is work-connected and therefore compensable." Cadiz v. QSI, Inc., 148 Hawai'i 96, 107, 468 P.3d 110, 121 (2020) (citation omitted).

2.   **The plain language of HRS § 386-92 supports the imposition of penalties**

The plain language of HRS § 386-92 supports imposing a penalty on the County for failure to pay TTD benefits due Costa. HRS § 386-92, "Default in payments of compensation, penalty" provides:

> If any compensation payable under the terms of a final decision or judgment is not paid by a self-insured employer or an insurance carrier within thirty-one days after it becomes due, as provided by the final decision or judgment, or if any temporary total disability benefits are not paid by the

---

3    HRS § 386-85 (1993) provides in relevant part that:

> In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary:

> (1)   That the claim is for a covered work injury[.]

employer or carrier within ten days, exclusive of Saturdays, Sundays, and holidays, after the employer or carrier has been notified of the disability, and where the right to benefits are not controverted in the employer's initial report of industrial injury or where temporary total disability benefits are terminated in violation of section 386-31, there shall be added to the unpaid compensation an amount equal to twenty per cent thereof payable at the same time as, but in addition to, the compensation, unless the nonpayment is excused by the director after a showing by the employer or insurance carrier that the payment of the compensation could not be made on the date prescribed therefor owing to the conditions over which the employer or carrier had no control.

(Emphases added.)

On its face, the plain language of HRS § 386-92 requires ("shall") the imposition of a 20% penalty when, after 10 days of receiving notice of a disability, an employer fails to pay TTD benefit to the injured employee unless the employer controverted "the right to benefits" in its initial report.[4]

Here, the County controverted whether Costa's disability was work-related, and thus not compensable, in its initial report. However, the County did not appeal the Director's decision finding Costa's injury compensable.[5] Thus,

---

[4] The record shows that Costa provided oral notice of his stress injury to his supervisor on May 9, 2012. An employer is required to file a WC-1 form within seven working days after becoming aware of an injury causing a worker to be absent from work for one day or more. HRS § 386-95 (Supp. 2002). The WC-1 filed by the County was dated September 19, 2012, more than three months after Costa first reported his injury to the County.

The Director found, however, that Costa did not report his May 9, 2012 injury to the County until September 18, 2012, the day before the County filed its September 19, 2012 report. Because this finding of fact has not been challenged on appeal, it is binding on this court. Nevertheless, we note this potential issue for guidance to employers and to the bar going forward.

[5] The County did not controvert the disability again until it sought an independent evaluation under HRS § 386-79 in October 2013.

14

under HRS § 386-87 (1993), the Director's decision became "final and conclusive between the parties" after the relevant statutory period ended.[6]

The County essentially asks this court to read HRS § 386-92 as creating an indefinite safe harbor, whereby an employer may withhold uncontroverted TTD benefits indefinitely without incurring a penalty, provided they controverted the disability at the outset of the claim. The plain language of the statute does not compel such a reading. Instead, the statute on its face clearly contemplates withholding payment of TTD benefits only where such benefits are actively controverted, and not where such benefits were previously but are no longer controverted.

This reading is confirmed by the use of the present, and not a past tense: "where the right to such benefits <u>are</u> not controverted in the employer's initial report of industrial injury." HRS § 386-92 (emphasis added).

To hold otherwise would lead to an absurd result or otherwise negate the very purpose of the statute. <u>See</u> <u>Tauese v. Dep't of Labor & Indus. Rels.</u>, 113 Hawai'i 1, 31, 147 P.3d 785, 815 (2006) (requiring courts "to construe statutes so as to avoid absurd results") (citation omitted); <u>City & Cnty. of Honolulu v.</u>

---

[6] HRS § 386-87(a) provides in relevant part that "[a] decision of the director shall be final and conclusive between the parties . . . unless within twenty days after a copy has been sent to each party, either party appeals therefrom to the appellate board[.]"

15

<u>Hsiung</u>, 109 Hawai'i 159, 173, 124 P.3d 434, 448 (2005) (rejecting statutory interpretations that "render[] any part of the statutory language a nullity").

This plain language reading of HRS § 386-92 is further confirmed by the broader statutory scheme of HRS chapter 386, as well as the chapter's legislative history.

3.  **The statutory scheme of HRS chapter 386 supports the imposition of penalties**

When HRS § 386-92 is read in the context of HRS chapter 386, it becomes clear that the County was not permitted to withhold payment of uncontroverted TTD benefits without incurring a penalty.

In keeping with the presumption of compensability for workers' compensation claims, HRS chapter 386 envisions employers paying TTD benefits to disabled employees without delay. For example, HRS § 386-31(b), "Temporary total disability," provides in relevant part:

> <u>The employer shall pay temporary total disability benefits promptly as they accrue to the person entitled thereto without waiting for a decision from the director</u>, unless this right is controverted by the employer in the employer's initial report of industrial injury. <u>The first payment of benefits shall become due and shall be paid no later than on the tenth day after the employer has been notified of the occurrence of the total disability</u>, and thereafter the benefits due shall be paid weekly[.]

(Emphases added.)

By requiring employers to not delay in paying TTD benefits prior to a definitive adjudication by the Director as to

16

their entitlement to TTD benefits, HRS chapter 386 envisions paying benefits to employees whose disability may in fact not be compensable.  Where an employer pays TTD benefits to an employee for a disability that is later determined to be not compensable, HRS § 386-52 (1993) provides for those payments to "be deducted from the amount payable as compensation" either "by shortening the period during which the compensation must be paid, or by reducing the total amount for which the employer is liable[.]"[7] HRS § 386-52(a) & (a)(2); see also Hawai'i Administrative Rules (HAR) § 12-10-24 (eff. 1981).[8]  However, "[i]f overpayment cannot be credited, the director shall order the claimant to reimburse the employer."  HRS § 386-52(a)(3).

Payment of TTD benefits, once begun, cannot be terminated except "upon order of the director or if the employee is able to resume work."  HRS § 386-31(b).  Otherwise, benefits

---

[7]     HRS § 386-52(a)(1) includes a notice requirement that provides:

The employer notifies the injured employee and the director in writing  of any such credit request stating the reasons for such credit and informing the injured employee that the employee has the right to file a written request for a hearing to submit any evidence to dispute such a credit[.]

[8]     HAR § 12-10-24 provides:

For the purpose of section 386-52(a), HRS, an employer may, with the approval of the director, deduct from an amount payable as compensation any advance payments made to the injured employee if the employee had been notified in writing at the time the advance was made that the payments were in lieu of compensation.

may only be terminated following notice to the employee and an opportunity to be heard:

> When the employer is of the opinion that temporary total disability benefits should be terminated because the injured employee is able to resume work, the employer shall notify the employee and the director in writing of an intent to terminate the benefits at least two weeks prior to the date when the last payment is to be made. The notice shall give the reason for stopping payment and shall inform the employee that the employee may make a written request to the director for a hearing if the employee disagrees with the employer. Upon receipt of the request from the employee, the director shall conduct a hearing as expeditiously as possible and render a prompt decision [awarding or denying compensation within 60 days].

HRS § 386-31(b).

Thus again, even where benefits should be rightfully terminated by an employer because the temporary disability has ended, HRS § 386-31(b) envisions the employer continuing to pay benefits for a minimum of two weeks. The employer would then need to seek reimbursement from the employee under HRS § 386-52. HRS chapter 386 thus evinces a preference, in keeping with the liberal construction discussed supra, toward employers presuming compensability, paying TTD benefits initially and without delay, and only then seeking recovery of unmerited payments after the fact.

An employer's failure to comply with the requirements of HRS § 386-31(b), either by failing to promptly pay out TTD benefits or by improperly terminating TTD benefit payments is subject to penalty under both HRS §§ 386-31(b) and 386-92: "[a]n employer or insurance carrier who fails to comply with this

section shall pay not more than $2,500 into the special
compensation fund upon the order of the director, in addition to
other penalties prescribed in section 386-92." HRS § 386-31(b).

To read HRS § 386-92 to permit an employer to contest
the compensability of a disability and then delay the payment of
TTD benefits – even after a determination that the disability is
compensable – would lead to an absurd result, especially
considering the larger statutory context of chapter 386.

4. **The legislative history of HRS chapter 386 supports the imposition of penalties**

This interpretation of HRS §§ 386-31(b) and -92 is also
confirmed by the legislative history of these statutes.

In 1969, HRS § 97-30(b), the then-controlling workers
compensation law equivalent to HRS § 386-31(b), was amended to
"compel the prompt payment of temporary total disability
benefits."[9] S. Stand. Comm. Rep. No. 268, in 1969 Senate
Journal, at 988. The legislature recognized that "it is vitally

---

[9] Prior to the 1969 amendment, HRS § 97-30(b) (Supp. 1963) provided:

> Where a work injury causes total disability not
> determined to be permanent in character, the employer, for
> the duration of such disability but not including the first
> two days thereof shall pay the injured employee a weekly
> benefit at the rate of sixty-six and two-thirds per cent of
> his average weekly wages, but not more than $75 nor less than
> $18 a week, or, if his average weekly wages are less than $18
> a week, at the rate of one hundred per cent of his average
> weekly wages. In case the total disability exceeds seven
> days, the compensation shall be allowed from the date of such
> disability.

(. . . continued)

important that the benefits be paid immediately upon its accrual to replace the loss of wages caused by the work injury." H. Stand. Comm. Rep. No. 178, in 1969 House Journal, at 694.

In 1971, HRS § 386-92 was amended to permit the Director to impose a penalty on employers that failed to make timely TTD benefit payments to injured employees.[10] The

---

(continued . . .)

The 1969 amendment added the following paragraph to § 97-30(b):

Temporary total disability benefits shall be paid promptly as it accrues and directly to the person entitled thereto without waiting for a decision from the director, unless the right to the benefits is controverted by the employer. The first payment of benefits shall become due and shall be paid no later than on the tenth day after the employer has been notified of the occurrence of the total disability, and thereafter the benefits due shall be paid weekly except as otherwise authorized pursuant to section 97-52.

1969 Haw. Sess. Laws Act 18, § 1 at 25 (emphasis added).

[10] Originally codified as HRS § 97-101 in 1963, HRS § 386-92 (Supp. 1973) was amended in 1971 to provide:

If any compensation payable under the terms of a final decision or judgment is not paid by a self-insured employer or an insurance carrier within thirty-one days after it becomes due, as provided by such final decision or judgment, or if any temporary total disability benefits are not paid by said employer or carrier within ten days, exclusive of Saturdays, Sundays, and holidays, after being notified of the disability, and where the right to said benefits are not controverted, there shall be added to the unpaid compensation an amount equal to ten per cent thereof payable at the same time as, but in addition to, the compensation, unless the nonpayment is excused by the director of labor and industrial relations after a showing by said employer or insurance carrier that the payment of the compensation could not be made on the date prescribed therefor owing to the conditions over which he had no control.

(Text added by amendment underscored.)

legislature recognized that prior to the amendment, "[t]he law [did] not provide a remedy for the effective enforcement of the [benefit] provision."  S. Stand. Comm. Rep. No. 216, in 1971 Senate Journal, at 878; H. Stand. Comm. Rep. No. 757, in 1971 House Journal, at 1007.  The penalty was adopted to create  such an enforcement mechanism.

Subsequent amendments to HRS chapter 386 also support this reading.  For example, in 1979, the legislature again evinced its intent to ensure timely payment of TTD benefits when it amended HRS chapter 386 by "providing a procedure which would enable an injured worker to have a prompt determination on his right[s]" where such payments had been unilaterally terminated by the employer.  H. Stand Comm. Rep. No. 834, in 1979 House Journal, at 1551.

And again, in 1995, the penalty for late TTD benefit payments was increased from 10% to 20% as part of a package of reforms meant to improve the efficiency of our workers' compensation scheme.  H. Conf. Comm. Rep. No. 112, in 1995 House Journal, at 1005-07; H. Stand Comm. Rep. No.575, in 1995 House Journal, at 1241-44.  In reforming the workers' compensation statutes, the legislature expressed its intent was "to enable the injured worker to receive timely and the most effective medical treatment and rehabilitation."  H. Stand Comm. Rep. No. 575, in 1995 House Journal, at 1242.

21

The legislative history of the relevant sections of HRS chapter 386 does not support a reading that permits an employer to delay payments indefinitely after an injury was determined to be compensable, regardless of whether or not compensability was initially challenged, as argued by the County. Instead, read as a whole, the legislative history clearly indicates the legislature's intent for injured workers to receive prompt payment of TTD benefits when due.

### 5. Distinguishing Panoke

Our decision in Panoke does not require a different outcome. The Panoke court considered inter alia whether the LIRAB erred in denying a penalty for delayed payments of TTD benefits to an injured worker. 136 Hawaiʻi at 466-68, 363 P.3d at 314-316. There, we held that "[b]ecause coverage for [the employee's] injuries was still in dispute for the period [at issue], and payments for that period had not been subject to a final judgment, [the employer and its carrier] are not liable for additional penalties under HRS § 386-92." Id. at 468, 363 P.3d at 316.

In Panoke, the employee filed an initial injury report when he injured his back on the job; his employer did not controvert the claim. Id. at 451, 363 P.3d at 299. However, several weeks later, the employee filed a second injury report, complaining of pain in his shoulders, which he attributed to his

22

injury.  Id.  His employer controverted liability for this second injury report, contending that the pain in his shoulders resulted not from his work injury but from when the employee broke his shoulders in a scooter accident.  Id. at 452, 363 P.3d at 300. After a hearing, the director found the injuries were compensable.  Id. at 453, 363 P.3d at 301.  The employer immediately appealed.  Id.

In considering whether, on these facts, the ICA erred in declining to assess a penalty against the employer, this court explained that, under HRS § 386-92, the 20% penalty applies either (1) if the TTD benefits are not paid "within thirty-one days after it becomes due, as provided by the final decision or judgment" or (2) if TTD benefits are not paid  "within ten days . . . after the employer or carrier has been notified of the disability, and where the right to benefits are not controverted in the employer's initial report of industrial injury[.]"  Id. at 467, 363 P.3d at 315 (quoting HRS § 386-92)  On the Panoke facts, neither of those conditions were met.  Id. at 468, 363 P.3d at 316.

First, we noted that there was no "final and conclusive decision" within the meaning of HRS § 386-87.  Id.  Because the employer timely filed an appeal to the LIRAB, the Panoke director's decision did not become final regarding the

23

compensability of work-related injuries for purposes of assessing a penalty for nonpayment. Id.

Second, we noted that the Panoke employer was not liable for a penalty for failure to make immediate payments "because the claim was still controverted." Id. In the absence of a final judgment and an appeal before the LIRAB, liability for the injury remained in controversy throughout the period for which penalties were sought. Id.

Further, the Panoke court rejected the employee's argument that a penalty was appropriate because the employer had failed to controvert liability in the initial injury report. Id. This, we explained, would have been impossible as the controverted shoulder injury did not arise in the initial injury report. Id.

The facts here easily distinguish Panoke. Here, despite controverting the initial injury report, the County did not appeal the Director's decision that Costa's injuries were compensable. Thus, after the statutory twenty-day period provided for in HRS § 386-87, the Director's decision became "final and conclusive" in the absence of an appeal to the LIRAB, triggering the County's duty to pay TTD benefits. Failure to begin paying TTD benefits at the latest within thirty-one days of the decision becoming final would incur a penalty under HRS § 386-92. Holding that penalties are appropriate on these facts

24

is consistent with our decision in Panoke, with the plain meaning of the statutory scheme, and with the policy concerns addressed by the legislature in crafting our workers' compensation laws.

Further, once the Director's decision that Costa's injuries were compensable became final, liability was no longer in controversy. Because compensability was not again controverted until the County sought an independent psychological evaluation, which was in all events after the period for which a penalty is here sought, the County could no longer shield itself from paying TTD benefits without incurring a penalty simply because it had initially controverted compensability.

The County's argument to that effect here is similar to the argument raised by the employee in Panoke and must be rejected on similar grounds. There, as discussed above, the employee argued that because the employer had not controverted the first of the two injury reports, it had waived its ability to challenge the second. Rejecting this argument, [this court], acknowledging the absurd result it would produce, reasoned:

> Holding that [the employer] had not controverted [the employee's] shoulder injury for the purposes of HRS § 386-92, merely because they had not done so in the initial injury report . . . would have the effect of allowing employees to subsequently add any injuries to their claims and prevent their employers from controverting them without paying a penalty.

Panoke, 136 Hawai'i at 468, 363 P.3d at 316.

25

Here, the County asks this court to hold that by simply controverting the initial injury report, HRS § 386-92 was indefinitely satisfied for purposes of avoiding penalties for late TTD benefit payments. This reading of HRS § 386-92 would lead to an equally absurd result, allowing employers to controvert whether an injury was work related at the outset and then either not pay or delay indefinitely TTD benefits that are no longer in controversy. Because such a reading is contrary to the manifest legislative intent in providing for penalties "in cases where liability is not denied and there is no question that the compensation is due [to] the injured worker[,]" we reject this argument. S. Stand. Comm. Rep. No. 216, in 1971 Senate Journal, at 878; see also H. Stand. Comm. Rep. No. 757, in 1971 House Journal, at 1007.

For the reasons set out above, we hold that, consistent with the plain meaning of HRS § 386-92, the Director may properly impose a 20% penalty where an employer or its carrier fails to make timely TTD benefit payments in cases where compensability is no longer denied and there is no question that the compensation is due the injured worker.

B.   **A Blanket Reservation Clause Does Not Contravene Otherwise Final and Conclusive Findings of Fact and Conclusions of Law Purporting to Determine Compensability and Award Benefits**

One final issue to be determined here is the impact of the reservation clause in the Director's decision on the County's duty to pay TTD benefits once compensability was established.

The County argues that, even if they were not within the safe harbor created by controverting Costa's claim under HRS § 386-31(b), the penalty under HRS § 386-92 is inappropriate because "TTD benefits were not ordered by the director until April 25, 2014[.]"  In effect, the County argues that because the decision contained a blanket reservation clause which provided that "[t]he matters of <u>average weekly wages, temporary disability</u>, permanent disability and/or disfigurement, if any, <u>shall be determined at a later date</u>[,]" no payment was due until such a determination occurred at a later date.  The County points to the Director's supplemental decision, which explicitly ordered payment of TTD benefits under HRS § 386-31(b).

In <u>Bocalbos v. Kapi'olani Medical Center</u>, 89 Hawai'i 436, 437, 974 P.2d 1026, 1027 (1999) (per curiam), a workers' compensation case involving a TTD benefits appeal before the LIRAB, this court held that LIRAB decisions and orders are final, appealable orders for purposes of HRS § 91-14, irrespective of

27

the decision and order's reservation clause.  As we explained in

Bocalbos:

> We take judicial notice, based on other workers'
> compensation cases that have been before us, that it is the
> standard practice of the director of labor in any decision
> awarding temporary disability benefits, regardless of the
> nature or extent of the injury, to state that "the matter of
> permanent disability and/or disfigurement, if any, shall be
> reserved for later determination."  Such a blanket
> reservation clause, apparently made for the protection of the
> injured worker, should not be used to prevent timely
> appellate review of an otherwise final decision on the
> matters of medical and temporary disability benefits.

Id. at 443, 974 P.2d at 1033.

The same reasoning applies here.  Because chapter 386

envisions injured workers receiving TTD benefits "promptly as

they accrue," we clarify that such a blanket reservation clause

should not be used to prevent timely payment of TTD benefits that

have been finally and conclusively determined to be due an

injured employee.  See HRS § 386-31(b).

Once the period for appeal had lapsed and the

Director's determination on compensability became "final and

conclusive between the parties" under HRS § 386-87, Costa was

entitled to receive "a weekly benefit at the rate of sixty-six

and two-thirds per cent of the employee's average weekly wages,"

pursuant to HRS § 386-31(b).[11]  The uncontested findings of fact

---

[11]    HRS § 386-31(b) provides in relevant part:

> Where a work injury causes total disability not
> determined to be permanent in character, the employer, for
> the duration of the disability, but not including the first
> three calendar days thereof, shall pay the injured employee a
> (. . . continued)

in the Director's decision determined Costa's average weekly wages to be $999.72. Contrary to the blanket reservation clause, the Director's decision conclusively determined both that compensation was due and the amount Costa was entitled to receive.

Finding the Director's decision and order final and conclusive irrespective of a reservation clause is consistent with this court's precedent and with the remedial nature of our workers' compensation law. See Bocalbos, 89 Hawai'i at 443, 974 P.2d at 1033; Van Ness, 131 Hawai'i at 558, 319 P.3d at 477.

Further, this interpretation is consistent with the LIRAB's recent decision and order, Seghorn v. Department of Transportation, where the LIRAB came to the opposite conclusion to the instant case on the applicability of the penalty for failure to pay TTD benefits. 2019 WL 5069081 (Oct. 9, 2019), aff'd 154 Hawai'i 206, 549 P.3d 345, 2024 WL 2797391 (App. May 31, 2024) (SDO). There, after rejecting an initial challenge to liability, the Director deferred determination on the issue of TTD benefits and the employer failed to challenge entitlement to

---

(continued . . .)

> weekly benefit at the rate of sixty-six and two-thirds per cent of the employee's average weekly wages, subject to the [certain] limitations[.]

Those limitations provided for in HRS § 386-31(b) do not apply to this case.

TTD benefits.  Id., at \*12.  Unlike the present case, the LIRAB

found a penalty was applicable.  Id., at \*13.  The Seghorn LIRAB

reasoned:

> According to the Hawai'i Supreme Court, the legislative purpose behind Section 386-92, HRS is to assess a penalty "in cases where an employer ... is notified of a work injury, does not deny liability for said injury under the law, and still neglects to pay TTD with ten days of notification." Panoke[, 136 Hawai'i] at 467[, 363 P.3d at 315] (citation and quotation omitted).  The Panoke Court noted that "the committee reports also suggest that the legislature did not intend for employers contesting a determination of liability by the Director to be required to pay ongoing TTD benefits while the appeal is pending[][.]" [Id.] at 46[7-68, 363 P.3d at 315-16].  The Court quoted from the legislative committee reports that the penalty is intended to apply to cases where "liability is not denied and there is no question that compensation is due the injured worker."  [Id.] at 468[, 363 P.3d at 316].
>
> Employer disputed liability for the November 23, 2015 work injury in its initial report of industrial injury.  The Director's November 2, 2016 decision determined Claimant's major depressive disorder as compensable.  The Director did not award Claimant TTD benefits.  Instead, the Director deferred determination on the issue of TTD.  Employer could still challenge or dispute liability for and Claimant's entitlement to TTD, but did not do so.  Employer paid Claimant TTD benefits in January and March 2017, which was well past 31 days after the Director's November 2, 2016 decision[.]
>
> There was no decision ordering Employer to pay TTD until the decision on appeal, dated October 18, 2017, but Section 386-31(b) states that TTD benefits should be paid, ". . . without waiting for a decision from the Director, unless the right is controverted. . . ."
>
> On this record, a penalty pursuant to Section 386-92, HRS is appropriate[.]

Id. at \*12-13 (emphasis in original).

The LIRAB's holding and reasoning in Seghorn is

consistent with our holding and reasoning here.  We therefore

hold that the ICA erred in affirming the LIRAB's reversal of

Director's imposition of a penalty for late payment of TTD benefits to Costa pursuant to HRS § 386-92.

## V. CONCLUSION

For the reasons stated above, we vacate the ICA's March 20, 2024 Judgment on Appeal and the LIRAB's January 31, 2018 Decision and Order reversing the Director's April 25, 2014 Decision assessing a 20% penalty against the County of Hawai'i for failure to timely pay TTD benefits due Costa under HRS § 386-92. We remand the case to the LIRAB for further proceedings consistent with this opinion. The LIRAB shall assess a penalty in the amount of $4,277.84[12] against the County of Hawai'i pursuant to HRS § 386-92. The LIRAB shall also determine attorneys' fees and costs as provided for under HRS § 386-93(b) (Supp. 2012).

Rebecca L. Covert             /s/ Mark E. Recktenwald
(Herbert R. Takahashi
on the briefs)               /s/ Sabrina S. McKenna
for petitioners

                            /s/ Todd W. Eddins

Christine J. Kim
(Gary N. Kunihiro
on the briefs)               /s/ Lisa M. Ginoza
for respondents            /s/ Vladimir P. Devens

---

[12] It has been more than a decade since the Director imposed the penalty on the County. At oral argument, Costa expressed an openness to seeking interest under either HRS §§ 478-3 (2008) or 636-16 (1993) on remand. Because this issue was not raised before this court, we express no opinion as to the propriety of interest in this context.